## Commonwealth vs. Joseph Blake.

Franklin. January 6, 2009. - July 16, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Sex Offender. Constitutional Law,* Sex offender, Delay in rendering decision. *Due Process of Law,* Sex offender, Adjudicatory proceeding, Delay in rendering decision.

At a civil trial, the evidence was sufficient to support the adjudication of the defendant as a sexually dangerous person. [268]

This court concluded that in the circumstances of a civil trial of a petition to adjudicate the defendant a sexually dangerous person, the thirteen-month delay from the conclusion of the trial until the judge rendered his decision did not require dismissal of the petition or a new trial. [268] Ireland, J., with whom Spina and Cowin, JJ., joined, was of the view that the defendant had not shown legally cognizable prejudice as a result of the delay. Gants, J., with whom Cordy, J., joined, was of the view that, notwithstanding significant prejudice attributable to the delay, the delay and resulting prejudice did not rise to the level of a constitutional violation. Marshall, C.J., with whom Botsford, J., joined, was of the view that the delay was both prejudicial and a violation of due process but that, in the circumstances of the case, the violation did not require dismissal of the petition or a new trial.

Statement requiring that in future jury-waived trials pursuant to G. L. c. 123A, § 14, to adjudicate a defendant a sexually dangerous person, the judge must, absent extraordinary circumstances, render a decision within thirty days of the end of the trial. [268]

Civil action commenced in the Superior Court Department on October 31, 2002.

The case was heard by *C. Brian McDonald,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Colleen C. Currie* for the defendant.

*Steven Greenbaum,* Assistant District Attorney, for the Commonwealth.

*Eric Tennen,* for Committee for Public Counsel Services, amicus curiae, submitted a brief.

By the Court. Following a jury-waived trial in the Superior

Court, the defendant was adjudicated to be a sexually dangerous person. See G. L. c. 123A, §§ 12-14. In an unpublished memorandum and order issued pursuant to its rule 1:28, the Appeals Court affirmed the judgment, *Commonwealth* v. *Blake*, 71 Mass. App. Ct. 1115 (2008), and we granted further appellate review. We affirm the judgment of the Superior Court.

The defendant raises two claims before us: first, he argues that the evidence was insufficient to support the judge's finding that he is a sexually dangerous person; second, he maintains that the judge's keeping the matter under advisement for more than thirteen months — from the conclusion of the trial on February 27, 2004, until the judge rendered his decision on April 4, 2005 — violated his constitutionally protected right to due process. The court unanimously agrees that there was sufficient evidence to support the adjudication and, therefore, rejects the defendant's first claim. With respect to the alleged due process violation, five Justices agree that there was no such violation. As reflected in the opinions that follow, three Justices are of the view that the defendant has not shown legally cognizable prejudice as a result of the thirteen-month advisement period; two Justices are of the view that, notwithstanding significant prejudice attributable to the delay, the delay and resulting prejudice did not rise to the level of a constitutional violation; and two Justices are of the view that the delay was both prejudicial and a violation of due process, but conclude that, in the circumstances of this case, the violation does not require dismissal of the petition or a new trial.

The court unanimously disapproves of the lengthy delay that occurred in this case. We require that future jury-waived trials pursuant to G. L. c. 123A, § 14, be promptly resolved and, toward that end, hold that for such jury-waived trials begun after the date of this opinion, the judge must, absent extraordinary circumstances, render a decision within thirty days of the end of the trial.

*Judgment affirmed.*

IRELAND, J. (concurring, with whom Spina and Cowin, JJ., join).

*Background.* The facts underlying this appeal are not in dis-

pute. The defendant is a sex offender who was convicted in 1995 after entering guilty pleas to two indictments, one charging rape of a child under sixteen years of age and the other charging indecent assault and battery on a child under fourteen years of age. He was sentenced to two and one-half years to be served in a house of correction and, thereafter, to a suspended sentence of from three to five years in the State prison, and five years' probation. On August 31, 1998, the defendant was found to have violated the conditions of his probation and was ordered to serve the three- to five-year sentence originally imposed.

On October 31, 2002, shortly before his scheduled release, the Commonwealth filed a petition, pursuant to G. L. c. 123A, § 12, to have the defendant civilly committed as a sexually dangerous person. A judge in the Superior Court ordered the defendant temporarily committed to the Massachusetts Treatment Center (treatment center). See G. L. c. 123A, § 12 (*e*). On January 17, 2003, after a hearing pursuant to G. L. c. 123A, § 13, a second judge concluded that there was probable cause to believe that the defendant was a sexually dangerous person and ordered him held at the treatment center for a period not exceeding sixty days for the purpose of examination and diagnosis by two designated qualified examiners. See G. L. c. 123A, § 13 (*a*). The Commonwealth petitioned for trial, and on March 13, 2003, a third judge allowed the Commonwealth's motion that the defendant remain committed to the treatment center for the duration of the trial and pending disposition of its petition. See G. L. c. 123A, § 14 (*a*), (*e*).

A three-day jury-waived trial took place on February 11, 12, and 27, 2004. The trial judge was the same judge who had presided at the defendant's probable cause hearing. The Commonwealth presented the following evidence. The defendant was thirty years of age at the time of the trial. The convictions underlying the petition were based on offenses that occurred when he was seventeen and nineteen years of age. His female victims were five and four years of age. Although the defendant pleaded guilty to a single indecent assault and battery charge regarding the five year old victim, he later admitted that he had sexually abused her multiple times over a period of eighteen to twenty-four months. (The defendant initially was indicted, in 1991, on

two counts of rape of a child for his conduct in relation to this victim, but the indictment was nol prossed due to the Commonwealth's uncertainty as to the defendant's age at the time of the offenses.) The defendant pleaded guilty to raping his four year old victim,[1] an offense that occurred approximately twenty months after the defendant's initial indictment for rape in 1991.[2]

The Commonwealth presented the expert testimony of two forensic psychologists, Drs. Barbara Quinones and Katrin Rouse-Weir. Dr. Quinones (also a clinical psychologist) served as one of the two qualified examiners in the case. Dr. Rouse-Weir had testified for the Commonwealth at the defendant's probable cause hearing but had not personally interviewed the defendant.[3] The witnesses each testified to her opinion that, based on diagnostic criteria contained in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) (DSM-IV), the defendant suffers from a mental abnormality, pedophilia, which makes him likely to reoffend if not confined to a secure facility. Dr. Quinones further testified to her opinion that the defendant suffers from an antisocial personality disorder, as defined in the DSM-IV, that also makes him likely to reoffend.

Testifying for the defense were three expert witnesses: Dr. Michael J. Murphy (who was the second qualified examiner in the case); Dr. Eric L. Brown; and Dr. Leonard A. Bard. Each of the defense experts had interviewed the defendant, and each testified to his opinion that the defendant does not suffer from an antisocial personality disorder and that he is not a pedophile. The defendant's primary trial strategy was to attack the sufficiency of the Commonwealth's evidence. After hearing closing arguments, the judge announced that he would take the matter under advisement.

---

[1] The defendant later denied that any rape had taken place.

[2] The defendant's juvenile records indicated that he had admitted to touching the vagina of a seven year old girl when he was nine years of age. This occurrence led to the defendant, in 1983, being charged as a juvenile with indecent assault on a child under the age of fourteen years of age. The charge was continued without a finding and dismissed the following year.

[3] The record indicates that Dr. Rouse-Weir is a "qualified examiner," as defined in G. L. c. 123A, § 1, for the evaluation of sexually dangerous persons. She did not serve in that capacity in this case.

The trial ended on February 27, 2004. On June 9, when no decision had been rendered in the case, counsel for the defendant filed a motion that judgment be entered. No action was taken on the motion. On January 14, 2005, the clerk of the Superior Court in Franklin County received a letter written by the defendant. In the letter, the defendant sought advice as to what action he could take to "compel the judge to render a decision without upsetting him." In response, an employee in the clerk's office returned the letter to the defendant with instructions that any correspondence regarding his case should be directed to the Administrative Office of the Trial Court. The judge filed findings, rulings, and order on April 4, 2005, and judgment allowing the Commonwealth's petition was entered on April 8, 2005.

*Discussion.* 1. I first address the defendant's claim that the Commonwealth's evidence was insufficient to support the judge's determination that he is a sexually dangerous person. I review the evidence under the applicable standard: "whether, after viewing the evidence (and all permissible inferences) in the light most favorable to the Commonwealth, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of sexual dangerousness, as defined by G. L. c. 123A, § 1." *Commonwealth* v. *Boyer*, 61 Mass. App. Ct. 582, 589 (2004). See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). The statutory elements are (1) a conviction of a sexual offense; (2) the existence of a mental abnormality or personality disorder; and (3) whether the mental abnormality or personality disorder makes the person likely to engage in sexual offenses if not confined to a secure facility. See G. L. c. 123A, § 1.[4] The court has clarified that something is "likely," for purposes of the statute, if it is "reasonably to be expected in the context of the particular facts and circumstances at hand," and "[i]n assessing the risk of re-offending, it is for the fact finder to determine what is 'likely.' "

---

[4]General Laws c. 123A, § 1, defines "[m]ental abnormality" as a "congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes that person a menace to the health and safety of other persons." The statute further defines a "[p]ersonality disorder" as a "congenital or acquired physical or mental condition that results in a general lack of power to control sexual impulses." *Id.*

*Commonwealth* v. *Boucher*, 438 Mass. 274, 276 (2002). "Weighing and crediting the testimony of witnesses during proceedings under G. L. c. 123A 'are for the trier of fact, and we will not substitute our judgment for that of the trier of fact.' " *Commonwealth* v. *Sargent*, 449 Mass. 576, 583 (2007), quoting *Commonwealth* v. *Bradway*, 62 Mass. App. Ct. 280, 291 (2004).

The judge's written memorandum of decision demonstrates a careful review and analysis of the evidence. He had before him five reports documenting the findings of five expert witnesses, including two from the qualified examiners (who presented differing opinions on whether the defendant is sexually dangerous), as well as police reports and the defendant's juvenile records, probation record, and Department of Correction record. The judge heard lengthy testimony from the expert witnesses, much of it conflicting, centering primarily on whether the defendant suffers from pedophilia.[5] Drs. Quinones and Rouse-Weir both testified that the diagnostic criteria of pedophilia contained in the DSM-IV are (a) over a period of at least six months, the person has recurrent, intense, sexual fantasies, urges, or behaviors involving sexual activity with a prepubescent child; (b) the person acted on those sexual urges; and (c) the person is at least sixteen years old and at least five years older than the child subjects of his fantasies or behaviors. The judge's written findings leave no doubt that he credited the testimony of the Commonwealth's two experts that the defendant fit the diagnostic criteria.

The judge expressly did not credit the defendant's three experts who testified to the contrary. I summarize the judge's reasoning set forth in his written memorandum of decision. Dr. Murphy's characterization of the defendant's assaults on his young victims as "crimes of opportunity," rather than enactments of improper sexual fantasies, was not credible. The defendant had

---

[5]There was conflicting testimony as well regarding whether the defendant was fifteen, sixteen, or seventeen years of age at the time he committed the first sexual offense underlying the Commonwealth's petition. The judge's resolution of this factual dispute was important, because the diagnostic criteria for pedophilia, set forth in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) (DSM-IV) and relied on by the Commonwealth's experts, require that the offender be at least sixteen years of age at the time an offense is committed. The judge's written findings indicate that he resolved the dispute in favor of the Commonwealth, and the defendant does not challenge this factual finding.

admitted to indecently touching his five year old victim (the daughter of his brother's girl friend) on fifteen to twenty occasions while he was babysitting her and, frequently, while he was giving her a bath. The judge stated: "I simply cannot accept [Dr. Murphy's] conclusion that such protracted conduct was not the result of conscious and deliberate behavior by the defendant that was driven by abnormal sexual fantasy regarding prepubescent girls." Dr. Brown's testimony that he could not make a diagnosis of the defendant, as a pedophile or otherwise, was not persuasive, in light of the fact that Dr. Brown conceded on cross-examination that the defendant's admitted behavior with his five year old victim alone would satisfy the diagnostic factors for pedophilia found in the DSM-IV. Dr. Bard's opinion that the defendant is not a pedophile was based on an incorrect belief that the defendant's indecent assault and battery occurred when the defendant was not over sixteen years of age and not more than five years older than his victim. Dr. Bard, therefore, opined that the defendant's behavior was "merely sexual experimentation." The judge found Dr. Bard to be clearly wrong on the age differential. The judge also noted, with apparent skepticism, that, in formulating his opinion, Dr. Bard had given little weight to the rape charge to which the defendant had pleaded guilty, but subsequently denied.

The judge heard conflicting testimony as well on whether the defendant suffers from an antisocial personality disorder. Dr. Quinones testified to a pervasive behavioral pattern of disregard for, and violation of, the rights of others, demonstrated by the defendant, beginning when he was younger than fifteen years of age. She concluded that the defendant met the diagnostic standards for an antisocial personality disorder set forth in the DSM-IV. The judge credited this testimony and expressly discounted the opinions of the defendant's experts that the defendant does not suffer from such a personality disorder.[6]

With respect to the likelihood that the defendant will reoffend,

---

[6]The judge reasoned that Dr. Murphy acknowledged, on cross-examination, that the defendant satisfied most, if not all, of the DSM-IV criteria for an antisocial personality disorder; Dr. Brown testified that the defendant's adult and juvenile criminal history demonstrated traits of antisocial personality disorder; and Dr. Bard opined that the defendant does not have an antisocial personality disorder, but he did not elaborate on, nor was he questioned regarding, this opinion.

the judge expressly credited the testimony of Drs. Quinones and Rouse-Weir that pedophilia requires long-term or permanent treatment and does not remit spontaneously. The judge found that the defendant has not completed a sex offender treatment program and that the lack of completion was due, in part, to his scheduled release from prison (after completing his criminal sentence) and, in part, to his lack of diligence in pursuing treatment. Dr. Rouse-Weir testified that the defendant's repetitive deviant behavior, despite the intervention of law enforcement and imposition of court sanctions, demonstrates that he has serious difficulty in controlling such behavior and that, in her opinion, it could be reasonably expected that the defendant would reoffend if released. In similar fashion, Dr. Quinones testified to her opinion that the presence of sexual deviant interests is consistently found to be one of the highest predictors of sexual offense recidivism and that the defendant's deviant sexual arousal, coupled with his lack of cooperation with treatment or with supervision while on probation, placed him in the category of sexual offenders who are considered a high risk to reoffend. The judge obviously credited this testimony. We conclude that there was more than sufficient evidence, found in testimony of Drs. Rouse-Weir and Quinones, and in other documentary evidence, to find that the Commonwealth had met its burden of proving that the defendant is a sexually dangerous person.

The defendant contends that the Commonwealth's experts used "faulty methodology" and relied on "incorrect information" in arriving at their conclusions. He argues that their testimony was unreliable (rather than not credible) and should not have been considered by the judge at all. The court has rejected this argument. The defendant has presented no support for the proposition that the methodology used by Drs. Quinones and Rouse-Weir was inappropriate, or otherwise not acceptable, and does not claim that any of the judge's specific factual findings (which were based on the testimony the defendant now challenges) were in error.

In *Commonwealth v. Bradway*, 62 Mass. App. Ct. 280, 283-287 (2004), the Appeals Court rejected the argument that testimony of qualified examiners must meet the standards set forth in *Commonwealth v. Lanigan*, 419 Mass. 15, 26 (1994), in order to

be admissible. The Appeals Court concluded that the Legislature "made a considered decision to draw on qualified and experienced professionals in the field to bring to bear their knowledge and informed judgment on the necessary, but difficult, task of evaluating whether sex offenders are likely to reoffend." *Commonwealth v. Bradway, supra* at 287. I agree with this analysis. Regardless whether the testimony of a qualified examiner would meet the *Lanigan* standard, G. L. c. 123A, § 14 (*c*), declares that reports of any qualified examiner, as defined in § 1, "shall be admissible at the trial" and that "psychiatric and psychological records and reports of the person named in the petition," whether provided by the Commonwealth or the defendant, are equally admissible. The appropriate remedy for a fact finder who views an opinion as baseless is to disregard it. The record contains no indication that the judge abused his discretion in finding the Commonwealth's experts to be reliable and credible.[7]

To the extent that the defendant claims that the Commonwealth lacks statutory authority to present an expert witness other than one who has been designated by the court as a qualified examiner, this issue was considered, and settled, in *Commonwealth v. Cowen*, 452 Mass. 757, 761-762 (2008). "[T]he statute, as well as specifying particular evidence that may be introduced at the commitment hearing, also provides that 'any other evidence tending to show that such person is or is not a sexually dangerous person shall be admissible at the trial if such written information has been provided to opposing counsel reasonably in advance of trial.' " *Id.* at 762, quoting G. L. c. 123A, § 14 (*c*). The defendant in the *Cowen* case also argued, as does the defendant here, that the testimony of the challenged expert witness (here, Dr. Rouse-Weir) deserved very little weight because, although she had testified at the probable cause hearing, she had not interviewed the defendant. The court stated: "The matter of

---

[7]The defendant points out, and the Commonwealth acknowledges, that the written report of Dr. Rouse-Weir contains certain factual errors. As just one example, she states in her report that "[h]is deviant sexual interest has resulted in repeated sexual assaults, despite several convictions for same behavior." In fact, the defendant's juvenile charge (when he was nine years of age) was continued without a finding and dismissed a year later. The misstatements, however, even assessed cumulatively, do not undermine the ultimate opinion expressed in her report. Moreover, the judge's findings confirm that he was not misled by any misstatement of fact.

how much weight is to be given a witness, particularly an expert witness, is a matter for the trier of fact, not an appellate court. See *Hill, petitioner,* 422 Mass. 147, 156 (1996). This is particularly true of experts in the medical field, who regularly are permitted to testify on the basis of examination of records and other materials with respect to an issue in dispute." *Commonwealth* v. *Cowen, supra* at 762.[8]

2. I now turn to the defendant's due process claim.[9] It is settled that a temporary civil commitment to the treatment center, pending the outcome of a G. L. c. 123A hearing, implicates a liberty interest, and therefore, due process protections apply.[10] See *Commonwealth* v. *Alvarado,* 452 Mass. 194, 196-197 (2008);

[8]There is no merit to the defendant's assertion that a delay in the timing of Dr. Quinones's interview with him diminishes the credibility of her qualified examiner's report or her testimony. The record indicates that Dr. Quinones sought to interview the defendant on February 13, 2003, as part of her qualified examiner evaluation. The defendant declined to be interviewed, citing a need to consult with his attorney, and Dr. Quinones completed a report, based solely on documentary evidence available, in which she opined that the defendant was a sexually dangerous person. On February 14, 2003, the defendant participated in an interview with the other designated examiner, Dr. Michael J. Murphy, who opined that the defendant was not a sexually dangerous person. A judge in the Superior Court thereafter allowed the Commonwealth's motion for an order that the defendant cooperate in an interview with Dr. Quinones or be precluded from offering in evidence the testimony or report of Dr. Murphy. The defendant's interview with Dr. Quinones took place on July 24, 2003, and she completed a second report on August 4. There is no basis on which the court can seriously consider the defendant's claim, when it was he who occasioned the delay.

[9]The defendant does not specify in his brief whether he asserts this claim under the Federal or the State Constitution. The court considers due process claims in this area under the same analysis. See, e.g., *Doe* v. *Attorney Gen.,* 426 Mass. 136, 147 (1997) (Fried, J., concurring); *Sheridan, petitioner,* 422 Mass. 776, 778 (1996), and cases cited.

[10]Proceedings under G. L. c. 123A are civil in nature, and accordingly, many constitutional protections associated with criminal sanctions do not apply. See *Wyatt, petitioner,* 428 Mass. 347, 351 (1998); *Hill, petitioner,* 422 Mass. 147, 152-154 (1996), quoting *Commonwealth* v. *Barboza,* 387 Mass. 105, 111-113, cert. denied, 459 U.S. 1020 (1982) (no constitutional right to jury trial; double jeopardy concept inapplicable). Long ago this court recognized, however, that "the civil-criminal distinction cannot be applied blindly to deny constitutional rights to those persons subject to a one day to life commitment as sexually dangerous persons which may have far more serious consequences for the individual than criminal punishment." *Commonwealth* v. *Travis,* 372 Mass. 238, 246-247 (1977) (addressing version of G. L. c. 123A, § 9, as appearing in St. 1966, c. 608).

*Commonwealth* v. *Sargent*, 449 Mass. 576, 579-580 (2007); *Commonwealth* v. *Gillis*, 448 Mass. 354, 357-358, 364 (2007); *Commonwealth* v. *Nieves*, 446 Mass. 583, 596-597 (2006); *Commonwealth* v. *Knapp*, 441 Mass. 157, 164-165 (2004); *Commonwealth* v. *Bruno*, 432 Mass. 489, 502-503 (2000). See also *Commonwealth* v. *Travis*, 372 Mass. 238, 246-247 (1977) (addressing version of G. L. c. 123A, § 9, as appearing in St. 1966, c. 608).

The defendant does not assert that his G. L. c. 123A hearing was not timely held or otherwise procedurally unfair. Nor does he assert that the temporary order committing him to the treatment center, pending disposition of the Commonwealth's petition, was not a lawful exercise of the court's authority under G. L. c. 123A, § 14 (*a*) or (*e*). Rather, he objects to the length of time that passed between the time his trial ended and the disposition of the Commonwealth's petition. Framed as a due process inquiry, the question is whether the thirteen-month delay that occurred in this case, during which the defendant remained temporarily committed to the treatment center, was so long as to be fundamentally unfair.

I conclude that the delay was unacceptably long, but that the defendant has not demonstrated that he was substantially prejudiced therefrom, and, consequently, it cannot be said that a due process violation occurred. Judges must be mindful of the liberty interest at stake when a person named in a petition under G. L. c. 123A is held at the treatment center pending the outcome of a jury-waived trial. The deprivation of liberty associated with a mandatory detention at the treatment center during civil commitment proceedings under G. L. c. 123A has been justified by recognizing the Legislature's overriding "concern with protecting the public from harm by persons . . . who are likely to be sexually dangerous." *Commonwealth* v. *Knapp*, *supra* at 160, quoting *Commonwealth* v. *Bruno*, *supra* at 504. A finding of probable cause to believe that the defendant is a sexually dangerous person not only justifies but mandates confinement in the treatment center until, and for the duration of, the trial. See *Commonwealth* v. *Knapp*, *supra* at 162. Once a trial has ended, however, this justification noticeably weakens, for the determination of probable cause to believe a person is a sexual predator must

yield to the determination of a fact finder that a person is, or is not, sexually dangerous. If the latter, the due process clause mandates that "confinement must cease." *Commonwealth* v. *Travis, supra* at 247, quoting *O'Connor* v. *Donaldson,* 422 U.S. 563, 580 (1975) (Burger, C.J., concurring).

The Legislature clearly was aware of the liberty interests at stake in G. L. c. 123A proceedings and fashioned a statutory scheme that takes place according to an expedited pace. General Laws c. 123A, § 13 (*a*), provides that, once probable cause is found to believe that a person is sexually dangerous, that person shall be committed to the treatment center "for a period not exceeding 60 days" to be examined and diagnosed by two qualified examiners. The qualified examiners, in turn, must file written reports and recommendations "no later than 15 days prior to the expiration of said period." *Id.* General Laws c. 123A, § 14 (*a*), provides that the Commonwealth may file a petition for commitment "within 14 days of the filing of the report of the two qualified examiners." On the Commonwealth's timely filing of a petition for commitment, "a trial by jury will be held within 60 days to determine whether such person is a sexually dangerous person." *Id.*[11] Finally, § 14 (*d*) provides, in relevant part, that "[i]f after the trial, the jury finds unanimously and beyond a reasonable doubt that the person named in the petition is a sexually dangerous person, such person shall be committed to the treatment center . . . ." The statute does not, however, provide guidance for a situation, as here, where the fact finder is the judge, and the judge's decision that a defendant is a sexually dangerous person is delayed for over one year after the conclusion of trial. Such a delay is clearly far longer than the Legislature intended.

The defendant attempts to draw an analogy between this case and cases involving the constitutional right to a speedy trial. He cites *Commonwealth* v. *McInerney,* 380 Mass. 59 (1980), where

---

[11]The Legislature did not contemplate that the statutory timetable would be strictly adhered to in every case. General Laws c. 123A, § 14 (*a*), provides that "[t]he trial may be continued upon motion of either party for good cause shown or by the court on its own motion if the interests of justice so require, unless the person named in the petition will be substantially prejudiced thereby. The person named in the petition shall be confined to a secure facility for the duration of the trial."

this court was asked to decide whether there exists a constitutional right to speedy sentencing, under the Sixth Amendment to the United States Constitution or art. 11 of the Massachusetts Declaration of Rights.[12] In that decision, the court acknowledged a line of Federal decisions that "treat the right to prompt sentencing as similar in most respects to the constitutional right to a speedy trial." *Id.* at 64-65, citing *Pollard* v. *United States*, 352 U.S. 354 (1957); *United States* v. *Campisi*, 583 F.2d 692, 694 (3d Cir. 1978) (following *Pollard* v. *United States, supra,* assuming that Sixth Amendment guarantees speedy sentencing); *Juarez-Casares* v. *United States*, 496 F.2d 190, 192 (5th Cir. 1974); and *United States* v. *Grabina*, 309 F.2d 783, 786 (2d Cir. 1962), cert. denied, 374 U.S. 836 (1963). Guided in part by the decisions cited above, we assumed in the *McInerney* case, without deciding, that there was a constitutional right to be sentenced reasonably promptly and, accordingly, applied to the facts of the case the balancing test applicable to claims that a defendant has been deprived of the right to a speedy trial, as set forth in *Barker* v. *Wingo*, 407 U.S. 514, 530 (1972). See *Commonwealth* v. *McInerney, supra* at 66-68. The factors to be weighed in analyzing the reasonableness of a delay in trial, as set forth in *Barker* v. *Wingo, supra,* are (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to be tried promptly; and (4) the resulting prejudice to the defendant. See *Commonwealth* v. *Horne*, 362 Mass. 738, 741-743 (1973). The court concluded that the fourth *Barker* factor, that of prejudice, was determinative of the case; the defendant had shown no prejudice and, therefore, there could be no violation. See *Commonwealth* v. *McInerney, supra* at 67, quoting *Juarez-Casares* v. *United States, supra* ("If there has been an unreasonable delay to the defendant, and if that delay results in prejudice, then a violation has occurred").

I am hesitant to draw parallels between this case and the *McInerney* case or any Federal case cited above. There are significant

---

[12]The defendant also points to Mass. R. Civ. P. 58 (a), as amended, 371 Mass. 908 (1977), which directs a clerk, in certain circumstances, to enter judgment "forthwith." The defendant concedes, however, as he must, that our rules of civil procedure do not apply to civil commitment proceedings under G. L. c. 123A. See Mass. R. Civ. P. 81 (a) (1) (8), as appearing in 423 Mass. 1412 (1996).

differences between a delay in a defendant's sentencing after an adjudication of guilt in a criminal case and a delay in the entry of a civil commitment order after an adjudication of sexual dangerousness. I nevertheless do acknowledge that principles of due process mandate in both circumstances that a defendant not be substantially prejudiced by unreasonably long delays in the administration of justice. I also note an observation, made by this court over three decades ago, that speedy trial cases may not be "wholly inapposite" to G. L. c. 123A proceedings. *Lamb, petitioner*, 368 Mass. 491, 500 (1975), citing *Strunk* v. *United States*, 412 U.S. 434, 440 (1973). See *Barker* v. *Wingo, supra*; *United States* v. *Marion*, 404 U.S. 307, 320 (1971); *Klopfer* v. *North Carolina*, 386 U.S. 213, 222-223 (1967); *Commonwealth* v. *Gove*, 366 Mass. 351, 356-365 (1974).

The defendant has alleged that the delay rendered him unable to proceed on an appeal from the judgment, unable to proceed with treatment, and unable to petition for examination and discharge pursuant to G. L. c. 123A, § 9. Nothing in the record substantiates these allegations. Even accepting them as true, however, they do not amount to legal prejudice that permits a conclusion that a due process violation has occurred. The defendant's case was not impaired by reason of the delay. Cf. *Commonwealth* v. *Lanigan*, 419 Mass. 15, 20 (1994) (comparing evidentiary delays with constitutional speedy trial principles). The defendant was not deprived of any right to be temporarily released from the treatment center during the time he awaited the judge's decision. See *Commonwealth* v. *McInerney, supra* at 68 (nothing in sentencing delay deprived defendant of chance to receive concurrent sentences; disappointment "does not amount to legal prejudice"). This court does not condone the length of delay in this case, and I conclude that nothing in the statutory language, or in our prior cases, would have entitled the defendant to dismissal of the Commonwealth's petition.[13]

The court holds that, in the future, judges who preside over a

---

[13]Indeed, the defendant in his brief does not suggest that the Commonwealth's petition should be dismissed. Nor does he identify any other remedy that would compensate him for the delay that occurred here. He requests only that this court recognize "the unacceptability of such a delay in light of the most serious liberty interest at stake," and the court has done so.

jury-waived trial pursuant to G. L. c. 123A, § 14, should render a decision and file written findings in the case within thirty days, unless the record discloses extraordinary circumstances justifying the delay. "Due process is a flexible concept capable of 'appropriate accommodation of the competing interests involved' " in proceedings pursuant to G. L. c. 123A. *Commonwealth* v. *Bruno*, 432 Mass. 489, 512 (2000), quoting *Lotto* v. *Commonwealth*, 369 Mass. 775, 780 (1976). The procedural timeline the court adopts today will accommodate the State's legitimate interests in protecting society from sexual predators, while ensuring that a person held in the treatment center pending the outcome of a G. L. c. 123A commitment hearing, who is ultimately determined to be not sexually dangerous, is detained no longer than necessary.

GANTS, J. (concurring, with whom Cordy, J., joins). I agree with the court's holding that there was sufficient evidence to support the trial judge's conclusion that the defendant is a sexually dangerous person. I also agree that the delay of more than thirteen months between the end of the jury-waived trial and the entering of judgment in a G. L. c. 123A, § 14, proceeding is not acceptable, and indorse the new rule that, absent extraordinary circumstances, a judge must render a decision within thirty days of the end of trial. I write separately because I do not agree with Justice Ireland's conclusion in his concurrence that the defendant suffered no prejudice from the delay, or with the Chief Justice's conclusion in her concurrence that the delay was so prejudicial as to constitute a violation of due process.

Rather, I conclude that the defendant indeed suffered significant prejudice from the delay in that, during the thirteen months in which the case was under advisement, his status was in a kind of legal limbo, in which he was confined at the Massachusetts Treatment Center but unable to receive treatment, unable to seek review of his continued confinement under G. L. c. 123A, § 9, and unable to appeal his confinement under G. L. c. 123A, § 14. This significant prejudice to the defendant, however, is not so substantial as to justify the defendant's release from civil confinement after being found to be a sexually dangerous person, because

it did not affect the fairness of his trial, his procedural rights at trial, or the judge's findings of fact and conclusions of law. See *Commonwealth* v. *Viverito*, 422 Mass. 228, 231 (1996).

For these same reasons, I do not believe that the delay can be deemed a violation of due process. Nor do I think it advisable to establish a precedent in which we find a violation of due process, and order no relief, or to suggest that a judge's delay in reaching a decision in a case where liberty is at issue may constitute a due process violation, and open the door to countless due process claims in criminal and civil commitment cases where matters have been taken advisement.

Today, we impose a new thirty-day deadline for the issuance of a decision following a jury-waived trial in a G. L. c. 123A, § 14, proceeding precisely because we recognize that a defendant would suffer unfair prejudice if he must remain in confinement beyond that deadline without a final determination as to whether he is a sexually dangerous person. I believe that we diminish our justification for this new deadline by denying the existence of prejudice.

MARSHALL, C.J. (concurring in part and dissenting in part, with whom Botsford, J., joins). I agree that there was sufficient evidence to support the trial judge's conclusion that the defendant is a sexually dangerous person. I also agree with Justice Ireland's suggestion that the thirteen-month delay between the close of evidence and the issuance of judgment in this case was "unreasonably long," *ante* at 280 (Ireland, J., concurring), but I do not agree with him that the defendant has not suffered "legal prejudice" occasioned by the delay. *Ante* at 280 (Ireland, J., concurring). In my view, "unreasonably long," and therefore arbitrary, governmental delay that significantly affects a fundamental liberty interest constitutes, ipso facto, significant prejudice to the defendant. In this respect I agree with Justice Gants, *ante* at 281 (Gants, J., concurring). Contrary to Justice Gants, however, I conclude that the defendant was not accorded sufficient rights of due process because of the lengthy delay in the issuance of a decision and entry of judgment against him in these proceedings pursuant to G. L. c. 123A. That conclusion need not be clouded by the

question of remedy, as posited by Justice Gants, because, as I describe *infra*, the defendant did not seek release or any other specific remedy.

Few rights are as precious, or as basic, as the right to be free from forcible government restraint or confinement, a right "firmly embedded in the history of Anglo-American law." *Aime* v. *Commonwealth*, 414 Mass. 667, 676 (1993). Before the government can forcibly deprive a person of liberty, it must afford the defendant due process. *Id.*, quoting *Foucha* v. *Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of liberty protected by the Due Process Clause from arbitrary governmental action"). Procedural due process, at a bare minimum, requires that the proceedings against a defendant not be fundamentally unfair. See, e.g., *Aime* v. *Commonwealth*, *supra* at 674 (procedural due process "requires that a statute or governmental action that has survived substantive due process scrutiny be implemented in a fair manner").

Procedural fairness is, as Justice Ireland notes, *ante* at 281 (Ireland, J., concurring), not a fixed concept. "The more precious the right, the greater the protection, whether the proceedings are labelled civil or criminal." *Commonwealth* v. *Barboza*, 387 Mass. 105, 111, cert. denied, 459 U.S. 1020 (1982), quoting *Commonwealth* v. *Knowlton*, 378 Mass. 479, 427 (1979). See *ante* at n.10 (Ireland, J., concurring). Where the government seeks to deprive a person of his liberty, its actions "call[] for procedures that offer considerable assurance against erroneous decisions and the fullest opportunity to challenge what government seeks to do." *Hill, petitioner*, 422 Mass. 147, 152 (1996). The test for determining whether the government's procedure has been fair is threefold: "we must balance the interest of the individual affected, the risk of erroneous deprivation of that interest, and the government's interest in the efficient administration of its affairs." *Commonwealth* v. *Nieves*, 446 Mass. 583, 590 (2006), quoting *Commonwealth* v. *Knapp*, 441 Mass. 157, 166 (2004). See *Commonwealth* v. *Bruno*, 432 Mass. 489, 512 (2000), quoting *Lotto* v. *Commonwealth*, 369 Mass. 775, 780 (1976) (due process review balances "appropriate accommodation of the competing interests involved"). In this case, for the reasons I explain *infra*, the balance weighs significantly in the defendant's favor.

First, the defendant's interests were "precious": his liberty. *Commonwealth* v. *Barboza, supra* at 111. Although involuntary restraint for purposes of sex offender treatment is remedial and not punitive, see *Kansas* v. *Hendricks*, 521 U.S. 346, 361-362 (1997); *Commonwealth* v. *Bruno, supra* at 500-501, the effect of forcible confinement is the same as it is for a criminal defendant. See, e.g., *Commonwealth* v. *Barboza, supra* at 109, quoting *Andrews, petitioner*, 368 Mass. 468, 488 (1975) (although G. L. c. 123A was rehabilitative and not criminal in nature, "the liberty interests of a respondent are at stake, a respondent is 'entitled to the benefit of the same stringent standard of proof as that required in criminal cases' ").[1] In each case the State assumes complete, watchful, coercive control over every aspect of the confined individual's life. For thirteen months, while awaiting word on his legal status, the defendant was not able, among other things, to leave the Massachusetts Treatment Center (treatment center) without the State's permission; to arrange his own living quarters, or his own day, without the State's permission; to communicate with others inside or outside the treatment center without the State's permission; or to direct his health care or other aspects of his welfare without the State's permission. His "loss of liberty [was] total." *Commonwealth* v. *Burgess*, 450 Mass. 366, 373 (2008), quoting *Commonwealth* v. *Nieves, supra* at 590-591.

Second, and correlatively, because the defendant's liberty interest was fundamental, the process he was due was substantial. *Aime* v. *Commonwealth*, 414 Mass. 667, 677 (1993). The process he received was not. The defendant asserts, and the Commonwealth does not dispute, that while his case was under advisement, he was unable to receive treatment, unable to appeal for review and discharge pursuant to G. L. c. 123A, § 9, and

---

[1] Justice Ireland assumes without deciding that this case may implicate the right to "speedy sentencing" implied in the Sixth Amendment to the United States Constitution and art. 11 of the Massachusetts Declaration of Rights; nevertheless, he notes without explanation that "significant differences" exist between criminal proceedings and civil commitment. *Ante* at 279-280 (Ireland, J., concurring). In my view, and notwithstanding that the defendant pressed the Sixth Amendment argument, it is unnecessary to engage in vague reasoning by analogy because traditional procedural due process principles apply. See, e.g., *Commonwealth* v. *Nieves*, 446 Mass. 583, 590 (2006), and *Commonwealth* v. *Bruno*, 432 Mass. 489, 512 (2000).

unable to appeal. For thirteen months the defendant lived in a legal twilight zone, not of his own making, see note 3, *infra,* in which he was deprived of any meaningful recourse to vindicate his liberty interests, and denied the basic right to be heard at a meaningful time and meaningful manner. *Paquette* v. *Commonwealth,* 440 Mass. 121, 131 (2003), quoting *Armstrong* v. *Manzo,* 380 U.S. 545, 552 (1965) ("A fundamental requisite of 'procedural' due process is the opportunity to be heard at a 'meaningful time and in a meaningful manner' "). Each day of legal limbo was a day charged against his treatment, his possible rehabilitation, and his possible release.

Even more troubling, the defendant was confined posttrial under no apparent statutory, or other, authority whatsoever. The delay to which the defendant was subjected is repugnant to the statutory scheme, which mandates that proceedings concerning allegedly sexually dangerous persons "take[] place according to an expedited pace." *Ante* at 278 (Ireland, J., concurring). See, e.g., *Commonwealth* v. *Alvarado,* 452 Mass. 194, 196 (2008), quoting *Commonwealth* v. *Gross,* 447 Mass. 691, 693 (2006) (sixty-day limit of confinement period under G. L. c. 123A, § 13, is "mandatory to protect a defendant's liberty interest"). Contrary to Justice Ireland's view, see *ante* at 278 (Ireland, J., concurring), the Legislature's clear and unambiguous intent to provide expedited proceedings under G. L. c. 123A is ample "guidance" for concluding that the delay here was impermissibly prejudicial to the defendant. See also *ante* at 277 (Ireland, J., concurring) (noting that once trial has ended, justification of temporary confinement "noticeably weakens"). Of course, if the fact finder has determined that the person is not sexually dangerous, the due process clause mandates that "confinement must cease." *Commonwealth* v. *Travis,* 372 Mass. 238, 247 (1977), quoting *O'Connor* v. *Donaldson,* 422 U.S. 563, 580 (1975) (Burger, C.J., concurring). But even where the person is determined to be sexually dangerous, as I have shown *supra,* delay of the kind in evidence here significantly enhances the possibility of a prolonged involuntary confinement. In either case the statutory scheme has been confounded.[2]

---

[2]Neither the Commonwealth, Justice Ireland, nor Justice Gants advances any nonstatutory basis for confining the defendant posttrial while awaiting the issuance of judgment.

Third, the delay did not promote, and was in fact contrary to, "the government's interest in the efficient administration of its affairs." *Commonwealth* v. *Nieves*, 446 Mass. 583, 590 (2006), quoting *Commonwealth* v. *Knapp*, 441 Mass. 157, 166 (2004). The judge gave no reason for the delay, and the defendant had no hand in it.[3] Cf. *Commonwealth* v. *Lanigan*, 419 Mass. 15, 19 (1994) (no prejudice where "the record does not indicate the defendant's zealous pursuit of his right to a speedy trial"). I recognize the heavy caseloads of our trial judges, and that the demands of drafting an opinion are time consuming. Nevertheless, the judge had a duty to ensure that the defendant's posttrial confinement was not unduly prolonged. The judge, for instance, could have issued a judgment and order of confinement soon after trial with a memorandum to follow promptly. He could have included the cause for delay on the record. What he was not at liberty to do was to wait thirteen months before issuing his judgment and written findings in a G. L. c. 123A proceeding with no explanation for the delay.

The question of remedy is difficult, but in this case the difficulty is alleviated by the defendant himself, who asks only, "at a minimum, that there be recognition by the Court of the unacceptability of such delay in light of the most serious liberty interest at stake, i.e., a commitment for life." The court's decision that in the future judges must "render a decision within thirty days of the end of the trial," *ante* at 268, sufficiently addresses the defendant's request for relief. We need not speculate about, but neither may we dismiss out of hand, the possibility of stronger relief should like circumstances arise in the future.

---

[3]The Commonwealth does not argue, nor could it, that the defendant did anything to cause the delay in issuance of a decision or judgment after trial. The contrary is established in the record. See *ante* at 271 (Ireland, J., concurring).