## COMMONWEALTH *vs.* ELI PARISEAU.

No. 10-P-2092.

Berkshire. February 3, 2012. - May 2, 2012.

Present: GRASSO, KAFKER, & MILKEY, JJ.

Further appellate review granted, 463 Mass. 1108 (2012).

*Sex Offender. Evidence,* Sex offender. *Constitutional Law,* Sex offender, Delay in rendering decision. *Due Process of Law,* Sex offender, Adjudicatory proceeding, Delay in rendering decision.

At the jury-waived trial in a proceeding pursuant to G. L. c. 123A, § 14, to determine whether the defendant was a sexually dangerous person, there was ample evidence to establish the defendant's likelihood to reoffend beyond a reasonable doubt. [707-709]

This court concluded that, in a proceeding pursuant to G. L. c. 123A, § 14, to determine whether the defendant was a sexually dangerous person, the posttrial delay in the issuance of the decision, although violative of the thirty-day rule imposed in *Commonwealth* v. *Blake*, 454 Mass. 267 (2009), did not justify dismissal of the defendant's petition or a new trial, where the defendant's sexual dangerousness was well-established in a fair trial that was not affected by the delay in the issuance of the decision, and where the trial judge immediately issued his decision once the delay was brought to his attention. [709-712]

CIVIL ACTION commenced in the Superior Court Department on September 2, 2009.

The case was heard by *John A. Agostini*, J.

*Brad P. Bennion* for the defendant.

*Joseph A. Pieropan*, Assistant District Attorney, for the Commonwealth.

KAFKER, J. In *Commonwealth* v. *Blake*, 454 Mass. 267, 281 (2009) (*Blake*), the Supreme Judicial Court adopted a thirty-day deadline for the issuance of a decision following a jury-waived trial in a sexually dangerous person (SDP) proceeding pursuant to G. L. c. 123A, § 14, without specifying a particular remedy if the deadline were missed. In the instant case, the defendant, Eli Pariseau, was found to be an SDP at such a jury-waived

trial, but the decision did not issue for four months.[1] On appeal, the defendant argues that there was insufficient evidence for the judge to find him sexually dangerous beyond a reasonable doubt, and that he is entitled to release or to a new trial due to the delay between the conclusion of the trial and the issuance of a decision on the merits.

We conclude that the evidence was more than sufficient to warrant the defendant's adjudication as an SDP beyond a reasonable doubt: Pariseau is a dangerous pedophile who has committed numerous sex crimes after prior convictions of other sex crimes; he also refuses treatment. We further conclude that the posttrial delay in the issuance of the decision violated the thirty-day rule imposed in *Blake*, but that the violation does not justify dismissal of the petition or a new trial, as the defendant's sexual dangerousness was well-established in a fair trial that was not affected by the delay in the issuance of the decision, and the trial judge immediately issued his decision once the delay was brought to his attention.

1. *Background.* a. *Procedural history.* The jury-waived trial took place on February 18, 2010. At the defendant's request, the trial judge gave the parties approximately thirty days to submit proposed findings of fact and rulings of law. After these were filed on March 15, 2010, no activity occurred in the case for over four months, until July 27, 2010, when the defendant's counsel sent a letter to the court inquiring about the status of the case. Three days later, on July 30, 2010, a decision and judgment issued. The trial judge did not explain the reasons for the delay.

b. *Facts.* We summarize the trial judge's findings of fact, which are not challenged on appeal. The defendant was convicted of indecent assault and battery on a child under the age of fourteen in 1981, and open and gross lewdness in 1984. The victims in those cases were nine and three year old girls. In 1991, he received a sentence of fifteen to twenty years in State prison on twenty-two counts of rape of a child. The latter convic-

[1]The decision actually issued five months after the trial was completed, but the respondent had requested a delay of one month following trial in order to prepare proposed findings of fact. We do not count that month as part of the delay.

tions stemmed from incidents in the summer of 1990, in which he sexually assaulted an eleven year old boy orally and anally on a nearly daily basis, and forced the victim by threats to molest two younger girls. Based on this pattern of conduct and the testimony of the qualified examiners, the trial judge found that the defendant suffers from a mental abnormality, namely pedophilia.

The trial judge further found, based again on the qualified examiners' testimony, that the defendant is likely to sexually reoffend if not confined to a secure facility. Among the factors the judge considered was that the defendant scored in the highest category for risk of reoffense on the Static-99 assessment, an "actuarial tool" used in the field. See *Doe, Sex Offender Registry Bd. No. 10800* v. *Sex Offender Registry Bd.*, 459 Mass. 603, 636 n.33 (2011). The defendant reoffended twice in the past after being incarcerated for sexual offenses. He has also refused to engage in sex offender treatment and has not admitted responsibility for his wrongdoing. In fact, the judge found that the respondent did not view his criminal behavior as wrong. While the defendant's age of fifty-eight reduced somewhat his risk of reoffense, the trial judge found that the other factors outweighed any such reduction in risk.

2. *Sufficiency of the evidence.* An individual may be committed to the Massachusetts Treatment Center as an SDP if he has been convicted of a sexual offense and he "suffers from a mental abnormality or personality disorder which makes [him] likely to engage in sexual offenses if not confined to a secure facility." G. L. c. 123A, § 1, as amended by St. 1999, c. 74, § 6. See G. L. c. 123A, § 14(*d*).

The defendant primarily attacks the sufficiency of the evidence as to likelihood of reoffending. Specifically, he contends that pedophilia is not always chronic and therefore does not inherently establish that he is likely to reoffend. He emphasizes that there was no evidence that he acted on his pedophilic tendencies while in the State prison for twenty years. He further contends that there has not been a direct link in the scientific literature between either the denial of offense or the refusal to participate in sex offender treatment and an increased risk of recidivism.

There was ample evidence of the defendant's likelihood to

reoffend. Both qualified examiners testified as to their findings. They also explained how they utilized actuarial tools to guide and structure their analysis and how that analysis properly placed the defendant in a "high risk for reoffending" category. They appropriately relied on the fact that the defendant had reoffended after being convicted twice of sex offenses.[2] "Weighing and crediting the testimony are for the trier of fact, and we will not substitute our judgment for that of the trier of fact." *Hill, petitioner*, 422 Mass. 147, 156, cert. denied, 519 U.S. 867 (1996). The evidence was more than sufficient to support the trial judge's conclusion.

To counter this evidence, the defendant relies heavily on the lack of sexual misconduct while he was incarcerated. Acknowledging that he had little to no contact with children while incarcerated, the defendant points to testimony from both experts that other pedophiles they have dealt with have found outlets for their deviant urges in prison such as collecting photographs or magazines relating to children and watching television shows geared toward children. There was no evidence of such conduct by the defendant, but neither was there affirmative evidence that he had not engaged in such activity. A fact finder may find an incarcerated pedophile sexually dangerous even without "contemporaneous or recent conduct indicating sexual dangerousness." *Id.* at 157. See *Commonwealth* v. *Chapman*, 444 Mass. 15, 24 n.16 (2005). It is not surprising that "[e]xamples of recent conduct showing sexual dangerousness may often be lacking where the individual's dangerous disposition is of a sort that there will be no occasion for that disposition to manifest itself in a secure environment." *Hill, petitioner, supra*.

The other arguments that the defendant raises also go to the weight rather than the sufficiency of the evidence. As for the contention that denial does not correlate with recidivism, Dr. Hazelett's written report, admitted as a trial exhibit, noted that "Mr. Pariseau's particular form of denial goes beyond simply

---

[2]As Dr. Hazelett testified, such reoffending is "an indication that the underlying disposition to engage in deviant sexual behavior must be relatively strong and persistent to persist after someone has already experienced negative sanctions being arrested and convicted and serving jail time. And when it persists a third time, that's even further evidence of the strength of the underlying drive or motivation to engage in such behavior."

denying his actions. He offers an explanation (i.e., he was in fact investigating the unfit parents of his victims) which is strikingly implausible on its face. This suggests that Mr. Pariseau has a very distorted concept of social norms and expectations . . . . This raised concerns that he does not necessarily view his behavior as wrong, and/or that if he reoffended he would be able to deny his way out of the consequences." As for his refusal to undertake treatment, the qualified examiner explained that "[f]ailure to participate has not been found to be a positive risk factor" that increases the risk of reoffending, but that continued participation in treatment is understood to be a "moderating factor" that "decreases the individual's risk."[3]

In sum, there was ample evidence to establish the defendant's likelihood to reoffend beyond a reasonable doubt. The defendant's counsel also freely questioned the qualified examiners' testimony and pointed out limitations in their scientific analysis through cross-examination. See *Commonwealth* v. *Bradway*, 62 Mass. App. Ct. 280, 289 (2004). The trial judge heard evidence that certain factors had or had not been found to correlate with recidivism, and was convinced by the Commonwealth's evidence. We discern no error.

3. *Posttrial delay.* The delay that occurred after trial requires us to interpret the Supreme Judicial Court's decision in *Blake.* In that case, the court established a rule that in jury-waived trials such as this one, "the judge must, absent extraordinary circumstances, render a decision within thirty days of the end of the trial." 454 Mass. at 268. There is no contention that extraordinary circumstances were involved in this case, and none appear in the record.[4] We must therefore determine the consequences of missing the thirty-day deadline in the circumstances of this case.

---

[3]We further note that there is no requirement that the qualified examiner's testimony meet the standards of *Commonwealth* v. *Lanigan*, 419 Mass. 15 (1994). See *Commonwealth* v. *Bradway*, 62 Mass. App. Ct. 280, 287-289 (2004).

[4]We are not unmindful of the difficult conditions and competing demands presently facing trial court judges, who are expected and required to produce thoughtful and detailed factual findings in cases of increasing complexity without benefit of law clerks or other assistance. As noted below, within only a few days of being reminded that he had not yet issued his decision, the trial judge produced a well-reasoned decision that is fully supported by the record.

The *Blake* court was not required to consider the appropriate remedy for violation of the thirty-day rule, as the rule was imposed prospectively. *Ibid.* Also, the defendant in *Blake* had not sought dismissal of the petition or any other specific remedy. See *id.* at 280 n.13 (Ireland, J., concurring); *id.* at 282-283 (Marshall, C.J., concurring in part and dissenting in part). The remedy Blake requested was a recognition that the thirteen-month delay in the case between the conclusion of the trial and the issuance of the trial judge's decision was unacceptable and a violation of due process. The court unanimously agreed that the lengthy delay was unacceptable and therefore imposed the thirty-day rule, but the court disagreed in three separate opinions whether the delay in that case was substantially prejudicial or a violation of due process.[5] The majority of the court did, however, make clear that they did not consider dismissal of the petition and release of the respondent appropriate in that case. See *id.* at 280 (Ireland, J., concurring); *id.* at 281-282 (Gants, J., concurring). They reached this conclusion because the delay "did not affect the fairness of his trial, his procedural rights at trial, or the judge's findings of fact and conclusions of law." *Id.* at 282 (Gants, J., concurring). See *id.* at 280 (Ireland, J., concurring) ("[t]he defendant's case was not impaired by reason of the delay").[6]

In *Blake*, over thirteen months had elapsed between the end of the trial and a decision on the merits. *Id.* at 271 (Ireland, J., concurring). About three months after trial, Blake's counsel had

---

[5]The justices disputed the practical and legal effects of the delay on the defendant's abilities to receive treatment, seek review of his continued confinement under G. L. c. 123A, § 9, and appeal his confinement under G. L. c. 123A, § 14, and the Commonwealth's authority to continue to detain him. Compare *Blake, supra* at 280 (Ireland, J., concurring) ("Nothing in the record substantiates these allegations. Even accepting them as true, however, they do not amount to legal prejudice that permits a conclusion [of a] due process violation"), with *id.* at 281-282 (Gants, J., concurring) (delay caused "significant prejudice" to defendant, but not enough for due process violation, as it did not affect fairness of trial), and *id.* at 282-283 (Marshall, C.J., concurring in part and dissenting in part) (lengthy delay causes due process violation).

[6]Chief Justice Marshall and Justice Botsford recognized that the "question of remedy is difficult" and left open "the possibility of stronger relief should like circumstances arise in the future." *Blake, supra* at 286 (Marshall, C.J., concurring in part and dissenting in part).

filed a motion for entry of judgment, on which no action was taken. *Ibid.* After another seven months or so, Blake himself had written to the clerk of the Superior Court asking how he could encourage the judge to make a ruling, and he was directed to the Administrative Office of the Trial Court. *Ibid.* No other action was taken between the end of trial and the decision on the merits. In the instant case, the delay was four months. The judge issued his decision just three days after the defendant brought the delay to his attention. Cf. *id.* at 279 (considering relevancy of factors such as length of delay, reason for delay, defendant's assertion of right to be tried promptly, and resulting prejudice); *Commonwealth* v. *Sanchez*, 74 Mass. App. Ct. 31, 37 (2009) (explaining that "a defendant shares the obligation to take active steps to move his case through the system . . . . [W]hen a defendant . . . has not entered an objection to delay, he will be held to have acquiesced in the delay" [citations and quotations omitted]).

We do not consider the dismissal of the petition and release of the defendant appropriate relief in the instant case. As in *Blake*, the defendant's sexual dangerousness was well-established at a fairly conducted trial that was not affected by the delay. His release would therefore pose a substantial danger to the public. See *Commonwealth* v. *Bruno*, 432 Mass. 489, 504, 512 (2000) (stressing society's "legitimate," "substantial," and "compelling" interests in being protected from sexual predators); *Commonwealth* v. *Bradway*, 62 Mass. App. Ct. at 287 (discussing Legislature's views on grave dangers posed by sexually violent offenders). Additionally, the delay in the issuance of the decision in the instant case was much shorter than in *Blake*, and the trial judge, unlike his counterpart in *Blake*, immediately responded once the delay was brought to his attention.

We also discern no reason to retry the original case, where, as explained above, the trial itself was properly conducted and not negatively affected by the delay, and the decision that was issued carefully analyzed the evidence and correctly applied the law. *Blake*, *supra* at 272 (Ireland, J., concurring). The four-month delay was also not long enough to render the decision stale when issued. The defendant is entitled to file a petition for examination and discharge once every twelve months, G. L.

c. 123A, § 9, and nothing in the record indicates that he could not presently file such a petition. As no other relief has been requested, we need not address the appropriateness of other remedies for the delay.

4. *Conclusion.* The Commonwealth introduced sufficient evidence to demonstrate beyond a reasonable doubt that the defendant was sexually dangerous at the time of trial. The defendant's arguments to the contrary go to the weight of that evidence, on which we defer to the ruling of the trial judge. Although the thirty-day rule was violated, neither dismissal of the petition nor a new trial is required by the four-month delay in the issuance of the decision in the instant case.

*Judgment affirmed.*