## COMMONWEALTH vs. RICHARD J. COWEN.

Bristol. November 4, 2008. - December 10, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.[1]

*Sex Offender. Practice, Civil,* Sex offender. *Evidence,* Sex offender, Expert opinion. *Witness,* Expert.

At a trial conducted pursuant to G. L. c. 123A, § 14, there was more than sufficient evidence, found in the testimony of two expert witnesses, accompanied by other evidence, for the judge to find that the Commonwealth had met its burden of proving that the defendant was a sexually dangerous person as defined by G. L. c. 123A, § 12. [762-763]

PETITION filed in the Superior Court Department on August 11, 2003.

Following an order of temporary commitment issued by *Robert J. Kane,* J., the case was heard by *David A. McLaughlin,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Frederic G. Bartmon* for the defendant.

*David J. Gold,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. After a five-day jury-waived trial in the Superior Court conducted pursuant to G. L. c. 123A, § 14, a judge found the defendant to be a sexually dangerous person and ordered him committed to the Massachusetts Treatment Center (treatment center) for an indeterminate period of from one day to life. See G. L. c. 123A, § 14 (*d*). The defendant challenges his commitment. He asserts that, based on the evidence presented, no rational trier of fact could have found, beyond a reasonable doubt, the elements of sexual dangerousness as defined in G. L. c. 123A, § 1. We transferred the case from the Appeals Court on our own motion. We now affirm the judgment.

---

[1]Justice Greaney participated in the deliberation on this case and authored this opinion, but retired before the opinion was issued.

The following facts are not in dispute. The defendant is a sex offender who was convicted in 1989 after entering guilty pleas to an indictment charging two counts of rape of a child with force, G. L. c. 265, § 22A. The indictment was based on multiple sexual encounters between the defendant and two young girls, his nieces, that took place over a period of three years. The victims were eleven and seven years of age at the time the abuse was reported to police in 1987. The defendant was given two sentences of from twelve to fifteen years, to be served concurrently.

In 2003, shortly before the defendant's scheduled release from custody, the Commonwealth filed a petition for his civil commitment as a sexually dangerous person pursuant to G. L. c. 123A, § 12. A judge in the Superior Court concluded that there was probable cause to believe that the defendant was a sexually dangerous person and ordered him temporarily held at the treatment center pending trial on the Commonwealth's petition. See G. L. c. 123A, § 13. The trial began on October 19, 2005, before another judge in the Superior Court. Documentary evidence before the judge included copies of the defendant's convictions, police reports prepared in 1987 during the investigation of the allegations against the defendant, a police report prepared in 1984 concerning a prior conviction of the defendant, records from the Department of Correction, and two letters handwritten by the defendant to his nieces (then adults) during his incarceration. These reports and records document the following events.

In 1984, Fall River police responding to reports of a disturbance interviewed a seven year old child, who volunteered to the police that he had been sexually molested, multiple times, by the defendant (his uncle). A charge of rape was nol prossed, and the defendant pleaded guilty to indecent assault and battery on a child under the age of fourteen years.[2]

Over the next three years, while on probation for this offense,

---

[2]At issue during trial was whether the defendant pleaded guilty to indecent assault and battery on a child under the age of fourteen years, as maintained by the Commonwealth, or to simple assault and battery, as maintained by the defendant. After examining original certified court records of the Fall River Division of the District Court Department, the judge resolved this issue in favor of the Commonwealth. We accept the judge's resolution of the matter.

the defendant repeatedly raped with force two young girls (his nieces). Police reports contain statements made by one victim indicating that the defendant had sexually abused her more than twenty times by digital penetration, oral penetration, and penile penetration. The second victim's statements (contained in the police reports) indicated that the defendant had sexual intercourse with her and would not stop when she screamed. The child also reported that the defendant performed oral sex on her and attempted anal penetration unsuccessfully. On one occasion, she reported, she was sleeping in the same bed as the defendant and his wife when the defendant placed a pillow over her head and had sexual intercourse with her. The defendant then had sexual intercourse with his wife with the child still in the bed.

While in prison for his offenses, the defendant was offered sex offender treatment, but declined to participate. While still incarcerated, prior to his probable cause hearing, the defendant wrote two letters to be delivered to his victims. In the first letter, delivered by the defendant's son, the defendant maintained, among other things, that he pleaded guilty to crimes that he did not commit and further contended that the size of his penis would not permit the activities of which he was accused. The defendant requested that the victims provide affidavits in support of his position. In the second letter, delivered by the defendant's son, the defendant again minimized his prior actions and asked that the victims make themselves available to the court by telephone to testify in his favor. The second letter contained a graphic drawing of the defendant's penis which, supposedly, demonstrated that the penetrations could not have occurred.

The Commonwealth's case focused on testimony of two psychologists. Dr. John Daignault, a forensic psychologist who had testified for the Commonwealth at the probable cause hearing, expressed his opinion that the force used by the defendant on his young female victims and the wide ranging nature of the various deviant sexual activities, as well as his 1984 abuse of a young male victim, demonstrated antisocial traits and a risk of recidivism. Dr. Daignault further testified that the two recent letters written by the defendant to his victims demonstrated an attitude tolerant of sexual assault and a persistent minimization of his conduct. He also found significant the fact that it was

family members who participated in the delivery of the offensive letters to the victims. Dr. Daignault drew from the defendant's exhibited deviant arousal and antisocial lifestyle a significant indicator of higher risk of recidivism, and found a lack of self-management skills evident in the fact that the defendant committed the many different sexual assaults and rapes of his nieces while he was on probation for the indecent assault and battery of his nephew. Finally, Dr. Daignault testified that the defendant's failure to participate in a relapse prevention program was a factor in his assessment of the risk of recidivism. Dr. Daignault never interviewed the defendant, but based his opinion on his review of the written records in evidence as well as the two qualified examiners' reports.

Dr. Stephen DeLisi, one of the two designated qualified examiners in the case, interviewed the defendant on multiple occasions. He testified to his opinion that the defendant has a mental abnormality known as pedophilia (a sexual interest in children), and an antisocial personality disorder, based on his sexual misconduct with his nephew and his two nieces over a period of years. Dr. DeLisi listed as factors supporting his opinion that the defendant was likely to reoffend the following: (1) the multiple acts of sexual misconduct; (2) the presence of a male victim; (3) deviant arousal; and (4) the fact that the defendant was on probation for the sexual assault of his nephew at the time he raped his two nieces. Another factor supporting his opinion, according to Dr. DeLisi, was the absence of sex offender treatment. Dr. DeLisi testified that incarceration does not cure pedophilia and that the two letters written by the defendant from prison demonstrated his callousness and a lack of appreciation of the impact of his acts on the victims.

Testifying in support of the defendant's position were Dr. Cornelius F. Kiley, the second designated qualified examiner, and two experts hired by the defendant, Dr. Daniel Kriegman and Dr. Joseph J. Plaud. All three witnesses testified that the defendant was not a sexually dangerous person. The defendant's position was that although he had committed the offenses charged, the offenses were independent and discrete crimes and not, as the Commonwealth argued, part of a pattern of pedophilia and antisocial traits. According to the defendant, his of-

fenses were the product of his "promiscuous" lifestyle in the 1980's, in which the combination of heavy substance abuse (drugs and alcohol) and dysfunctional family dynamics made sexual abuse, in context, possible. The defendant's experts testified that whatever risk the defendant may once have posed to children was minimized, if not completely eliminated, by his lengthy term of incarceration and his increased age.

The judge concluded beyond a reasonable doubt that the defendant (1) had been convicted of a sexual offense; (2) suffered from a mental abnormality (pedophilia) and a personality disorder (antisocial traits); as a result of which (3) the defendant was likely to engage in sexual offenses if not confined to a secure facility. See *Commonwealth* v. *Boucher*, 438 Mass. 274, 277-281 (2002); G. L. c. 123A, § 1. Judgment entered allowing the Commonwealth's petition.

On appeal, the defendant's argument unfolds as follows. Three of the five psychologists who testified expressed opinions that he was not a sexually dangerous person. One of the two opposing opinions was of limited value because Dr. Daignault did not personally interview the defendant, but based his opinion, primarily, on unreliable police reports that contain allegations of behavior committed twenty years before the relevant diagnostic time. Two of the experts who formulated an opinion that the defendant was not sexually dangerous based their opinions, in part, on an adjusted actuarial assessment test (the so-called "Static-99"),[3] which, based on the defendant's test score, supported a determination that he presents a low risk of recidivism. The defendant characterizes the testimony and evidence in his favor as "compelling [and] scientifically objective" and asserts that no rational trier of fact could conclude otherwise. We disagree.

The defendant conceded at oral argument that a qualified probable cause expert (in this case Dr. Daignault) may testify at the commitment hearing. This concession is well taken, because

---

[3]The "Static-99" test method used by three of the five psychologists who testified (Drs. Daignault, Kriegman, and Plaud) was described during the trial as an actuarial tool that measures constant factors (each with an independent weight) used to assess an offender's risk of recidivism. The score is then adjusted upwards or downwards depending on risk factors that are clinically determined to be significant in a particular sex offender's case.

the statute, as well as specifying particular evidence that may be introduced at the commitment hearing, also provides that "any other evidence tending to show that such person is or is not a sexually dangerous person shall be admissible at the trial if such written information has been provided to opposing counsel reasonably in advance of trial." G. L. c. 123A, § 14 (*c*). The testimony of a properly qualified expert who testified at the probable cause hearing would be permitted under the latter provision.

We turn now to the defendant's essential argument, which he states as follows:

> "[W]hen one examines the overwhelming testimony, opinion and scientific data of [his] three expert witnesses . . . the scientific and other concessions of the Qualified Examiner who testified for the Commonwealth and places in minimally relevant context the testimony of [Dr. Daignault], it is inescapable that a rational trier of fact cannot find beyond a reasonable doubt that the Commonwealth has met its burden of proof that the [defendant] is a sexually dangerous person as statutorily defined."

This argument is unpersuasive. We reject the defendant's suggestion that Dr. Daignault's testimony, even though admissible, deserved very little or no weight. The matter of how much weight is to be given a witness, particularly an expert witness, is a matter for the trier of fact, not an appellate court. See *Hill, petitioner*, 422 Mass. 147, 156 (1996). This is particularly true of experts in the medical field, who regularly are permitted to testify on the basis of examination of records and other materials with respect to an issue in dispute.

Moreover, the defendant's characterization of his witnesses' testimony as "overwhelming" is directly undercut by a significant number of the judge's written findings, in which the judge determined the defendant's witnesses to be less than credible in certain aspects. We point to a few. The judge found, for instance, that Dr. Kiley's opinions were significantly diminished by his admission that he did not review certain documents, such as the 1984 and 1987 police reports, and one of the letters from the defendant to his niece victims. The judge found Dr. Kiley's repeated responses that activities such as rape of a child with

force were not significant in assessing the defendant's antisocial traits to be "incomprehensible." Likewise, the judge assigned little weight to Dr. Kiley's use of the lack of new offenses between the time of his arrest for rape and the date of his conviction as evidence of a lower risk of recidivism, in light of the fact that the defendant committed the offenses against his nieces after arrest and sentencing for assault and battery of his nephew. The judge expressly discounted the opinion of Dr. Kriegman that although the defendant may have been a pedophile in the 1980's, he no longer is one. The judge pointed to Dr. Kriegman's own admission that the Static-99 test is "not very accurate." The judge also questioned Dr. Kriegman's characterization of the two letters as the acts of a desperate person, rather than impulsive acts of a person who is "out of control." The judge determined that testimony opining that the defendant was at lower risk to reoffend because he was not an "exclusive" pedophile (i.e., he also had adult sexual partners) was compromised by the fact that the defendant was married for the majority of the years during which he committed his offenses. With respect to testimony of all three witnesses, the judge did not find that "credible evidence warrants an inference that the [defendant's] whole house or subgroup was engaged in polysubstance abuse or in promiscuous lifestyles." This determination is amply supported.

We review the evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Walsh*, 376 Mass. 53, 58 (1978); *Miller, petitioner*, 71 Mass. App. Ct. 625, 635 (2008), and conclude that there was more than sufficient evidence, found in testimony of Drs. Daignault and DeLisi, accompanied by other evidence, for the judge to find that the Commonwealth had met its burden of proving that the defendant is a sexually dangerous person.

*Judgment affirmed.*