NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11999

JAMES GREEN, petitioner.


Suffolk.     March 10, 2016. - October 4, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.[1]


Sex Offender.  Evidence, Sex offender, Expert opinion.
     Practice, Civil, Sex offender, Instructions to jury.



     Petition filed in the Superior Court Department on August
11, 2011.

     The case was heard by Laurence D. Pierce, J., and a motion
for a new trial was heard by him.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Mary P. Murray for the Commonwealth.
     Michael A. Nam-Krane for the petitioner.
     Joseph M. Kenneally, for Committee for Public Counsel
Services, amicus curiae, submitted a brief.


     HINES, J.  This is an appeal from the denial of the

Commonwealth's motion for a new trial after a jury found the

_____

     [1] Justices Spina, Cordy, and Duffly participated in the
deliberation on this case prior to their retirements.

petitioner, James Green, no longer sexually dangerous in a proceeding brought pursuant to G. L. c. 123A, § 9. In the motion for a new trial, the Commonwealth challenged as erroneous and prejudicial the judge's instruction that in order to find the petitioner sexually dangerous, the jury must credit the expert opinion testimony of the qualified examiner. The Commonwealth claims that the judge's instruction was erroneous because it improperly commented on the weight a jury must give to a witness's testimony and prejudicial because it precluded the jury's full consideration of testimony by the community access board (CAB).[2]

We granted direct appellate review to clarify the reach of Johnstone, petitioner, 453 Mass. 544 (2009), where we interpreted G. L. c. 123A as creating a unique and central role for the qualified examiner[3] in proceedings under the statute.

---

[2] The community access board (CAB) reviews all records of a person adjudicated as a sexually dangerous person (SDP) and confined at the Massachusetts Treatment Center (treatment center) and reports those findings to the chief administrative officer of the treatment center. G. L. c. 123A, § 6A, second par. The CAB also conducts annual reviews of the current sexual dangerousness of each person held at the treatment center. Id. These reports are admissible in hearings involving persons adjudicated as sexually dangerous. Id.

[3] A qualified examiner is either (1) a physician who is licensed by the Commonwealth and certified or eligible to be certified in psychiatry by the American Board of Psychiatry and Neurology; or (2) a psychologist who is licensed by the Commonwealth. In all cases, a qualified examiner is designated as such by the Department of Correction and has at least two

Our conclusion in Johnstone, that a petitioner is entitled to be discharged without trial if neither qualified examiner opines that the petitioner remains a sexually dangerous person (SDP) and that the Commonwealth may not rely on the CAB or other sources to obtain the necessary expert testimony, established a "gatekeeper" role for the qualified examiner. While our holding in Johnstone makes clear that a trial is foreclosed unless at least one qualified examiner opines that the petitioner remains sexually dangerous, we did not explicitly address whether, after crossing that threshold, the Commonwealth may meet its burden to prove sexual dangerousness regardless of the probative value of the qualified examiner's testimony. We conclude, based on the centrality of the qualified examiner's role in SDP proceedings, that a finding of sexual dangerousness must be based, at least in part, on credible qualified examiner opinion testimony and that a jury instruction to that effect is essential to the informed exercise of the jury's fact-finding function.[4] Therefore, we affirm the judge's denial of the Commonwealth's motion for a new trial.

---

years of experience with diagnosis or treatment of sexually aggressive offenders. Qualified examiners need not be employees of the Department of Correction (department) or of any facility or institution of the department. G. L. c. 123A, § 1.

[4] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services.

Background.[5]  After being convicted of three separate sex

offenses between 1991 and 2002, Green volunteered for treatment

while incarcerated.  After being convicted of another sex

offense in 2006, he was transferred to the Massachusetts

Treatment Center in 2007.  Prior to his scheduled release, the

Commonwealth filed a petition[6] to commit Green as an SDP.[7]  In

July, 2011, after a jury trial, Green was found sexually

dangerous.  Two months later, in August, 2011, Green filed a

petition for discharge pursuant to G. L. c. 123A, § 9.[8]  As

---

[5] Although both parties recite at great length the
underlying facts of the defendant's convictions, we need not
repeat that history, as it is relevant only to prejudice, an
issue we do not reach given our conclusion that the challenged
jury instruction was not erroneous.

[6] After a person has been convicted of a sex offense,
adjudicated as a sexual offender, or charged with a sex offense
but deemed incompetent to stand trial, the Commonwealth may file
a petition alleging that the individual is an SDP who should be
civilly committed when his or her criminal custody ends.  G. L.
c. 123A, §§ 1, 12 (b).  See Commonwealth v. Nieves, 446 Mass.
583, 585-587 (2006).

[7] In accordance with the statutory definition, an SDP either
(1) "suffers from a mental abnormality or personality disorder
which makes the person likely to engage in sexual offenses if
not confined to a secure facility;" or (2) has been previously
adjudicated as an SDP and engages in misconduct that "indicates
a general lack of power to control . . . sexual impulses,"
making the person "likely to attack or otherwise inflict injury
on . . . victims because of uncontrolled or uncontrollable
desires."  See G. L. c. 123A, § 1; Nieves, 446 Mass. at 586-587.

[8] A person committed to the treatment center is entitled to
file a petition for examination and discharge once every twelve
months.  G. L. c. 123A, § 9, first par.  A discharge petition
can be filed by the committed person or that person's parents,
spouse, issue, next of kin, or friend.  The Department of

permitted by the statute, the Commonwealth requested a jury trial to determine whether the petitioner remained an SDP.

During pretrial hearings in March, 2015, the judge informed the parties of his intention to instruct the jury that they may not find the petitioner to be sexually dangerous unless they credited the testimony of a qualified examiner who so opines. See Johnstone, 453 Mass. at 553. The judge provided a written copy of the instructions, and the Commonwealth renewed its objection.

At trial, the qualified experts disagreed as to whether the defendant had a qualifying mental condition, whether his age reduced his likelihood of reoffending, and whether his treatment protocol during confinement was effective. The Commonwealth presented two experts who opined that Green remained sexually dangerous. The qualified expert called by the Commonwealth, Dr. Nancy Connolly, testified that the defendant had "personality disorder with antisocial features," and that if released, "he would not be able to control his sexual impulses." Dr. Angela Johnson, representing a unanimous vote among CAB members,[9] agreed with Dr. Connolly's diagnosis and testified that the CAB was

---

Correction may file a petition if it concludes that a person is no longer an SDP. Id. In all cases, a fact finder must determine that the petitioner is no longer sexually dangerous in order for the petitioner to be released.

[9] The CAB determines a petitioner's sexual dangerousness by a majority vote.

concerned about the defendant's plan to return to the town where he perpetrated his second offense without the benefit of monitoring by the probation department. Green presented three experts who opined that he was no longer sexually dangerous. Dr. Joseph Plaud and Dr. Leonard Bard testified that Green did not meet the criteria for either a personality disorder or mental abnormality. The other qualified examiner, Dr. Margery Gans, joined Green's experts in opining that he was no longer sexually dangerous, given his advanced age, participation in treatment, improvements in impulse control, cooperation with authority, and identification of cognitive distortions that "drove" his behavior in the past.

The judge instructed the jury as follows:[10]

> "In order to find that Mr. Green is a sexually dangerous person you must credit the opinion of Dr. Nancy Connolly, who testified in her capacity as a qualified examiner and opined that Mr. Green is a sexually dangerous person as defined in the law at the present time. It is not required that you accept all of the reasons given by Dr. Connolly for her opinion. You might find support for the opinion anywhere in the evidence, including the testimony of Dr. Angela Johnson, the CAB representative. However, you cannot find that Mr. Green is a sexually dangerous person today unless you give credit to the opinion of Dr. Connolly that Mr. Green suffers from a

---

[10] See Massachusetts Superior Court Criminal Practice Jury Instructions § 10.1.3 (Mass. Cont. Legal Educ. 2013), entitled "Opinion of CAB Representative Insufficient," proposing a model instruction for cases "[w]here the opinions of the Qualified Examiners are split and a Qualified Examiner and a member of the CAB testify that Petitioner is today a sexually dangerous person."

mental condition that causes him serious difficulty in controlling his sexual impulses at the present time."

On the second day of the jury's deliberations in this case, the Appeals Court issued its decision in Souza, petitioner, 87 Mass. App. Ct. 162, 173 (2015), concluding in dicta that a nearly identical instruction was erroneous in "suggesting the relative weight the jury can or should assign to the various Commonwealth experts."[11]  The Appeals Court added that the judge's instruction was "not compelled by Johnstone" because "Johnstone held only that the Commonwealth cannot continue to pursue SDP confinement of someone unless at least one of the two assigned [qualified examiners] concludes that the person is an SDP."  Id.  In this case, relying on Souza, the Commonwealth moved to reinstruct the jury.  After a telephone hearing, the judge denied the motion, reasoning that the parties were informed before trial that the instruction would be given; seven hours of deliberation had already occurred; and reinstruction

---

[11] The instruction deemed erroneous in Souza, petitioner, 87 Mass. App. Ct. 162, 172 (2015), stated:

"You heard of testimony from Dr. Tomich, a representative of the community access board. The law permits a representative of the community access board to testify in all proceedings like this one, and you may certainly rely upon the testimony of Dr. Tomich.  However, you cannot find that the petitioner, Mr. Souza, is sexually dangerous based solely on the testimony of Dr. Tomich.  In order for you to find that Mr. Souza is today a sexually dangerous person, you must find support for that determination in the opinion that [sic] Dr. Kelso, who testified as a qualified examiner."

would lead to confusion and distract from the jury's fair consideration of the evidence. That same day, the jury returned their verdict that Green was not an SDP.

On the day of the defendant's anticipated discharge, the Commonwealth moved for a new trial or, in the alternative, for a stay of discharge pending appeal. The judge denied the motion for a new trial but reserved decision on the motion for a stay in order to determine whether the probation department could supervise the defendant after release.[12] After further hearings, the judge also denied the Commonwealth's motion to stay the petitioner's discharge pending appeal but stayed the effective date of discharge by five days to permit the Commonwealth to seek review by a single justice of the Appeals Court, which it then did.

After a single justice of the Appeals Court granted the Commonwealth's motion for stay, Green appealed that decision to the full Appeals Court and filed an application for direct appellate review by this court. The Commonwealth also filed a separate appeal from the jury's verdict and an application for direct appellate review. Both applications for direct appellate

---

[12] The judge determined that he lacked the authority to require the probation department to supervise Green where the probation department itself had determined that it lacked jurisdiction to monitor individuals released from civil confinement because such persons have not been "charged with 'an offense or crime'" or "adjudicated a delinquent," G. L. c. 276, §§ 87, 87A, and G. L. c. 119, § 58.

review were granted, and the appeals were consolidated for hearing by this court. Thereafter, Green filed a motion to vacate the stay in the county court. On April 28, 2016, this court ordered that Green be discharged effective May 2, 2016. Green's motion pending in the county court was thereafter dismissed as moot on May 18, 2016.

Discussion. 1. Standard of review. We review jury instructions for legal error resulting in prejudice to the moving party.[13] See Commonwealth v. Kelly, 470 Mass. 682, 687-688 (2015); Kelly v. Foxboro Realty Assocs., 454 Mass. 306, 310 (2009). A "charge is to be considered as a whole to determine whether it is legally correct, rather than tested by fragments which may be open to just criticism" (citation omitted). McHoul, petitioner, 445 Mass. 143, 156 (2005), cert. denied, 547 U.S. 1114 (2006). Instructions that convey the proper legal standard, particularly when tracking model jury instructions, are deemed correct. Commonwealth v. Young, 461 Mass. 198, 210 (2012). Because the judge's instruction is derived from our ruling in Johnstone, we review it within that context to determine if it was error.

---

[13] The issue was preserved by the Commonwealth's written motion in limine, its objection at the charge conference, and repeated acknowledgements by the trial judge. See Commonwealth v. Grady, 474 Mass. 715, 719 (2016) (motion in limine preserves appellate rights as to subject of motion in limine).

2.  The principle of Johnstone.  As noted, Johnstone, 453 Mass. at 545, established a gatekeeper role for the qualified examiner in an SDP proceeding, mandating discharge of the petitioner before trial unless at least one qualified examiner opines that the petitioner remains sexually dangerous. Underlying the Commonwealth's challenge to the jury instruction is an interpretation of Johnstone that limits the qualified examiner's statutory role to that of gatekeeper.  We disagree that Johnstone should be interpreted so narrowly.

The thrust of Johnstone is that because a person may be involuntarily and indefinitely committed as an SDP, due process and G. L. c. 123A require proof of sexual dangerousness beyond a reasonable doubt based on expert testimony from a designated qualified examiner.  Johnstone, 453 Mass. at 547, 549, citing Kansas v. Crane, 534 U.S. 407 (2002), Kansas v. Hendricks, 521 U.S. 346 (1997), and Dutil, petitioner, 437 Mass. 9 (2002). Although both qualified examiner and CAB evidence are presumptively admissible to prove sexual dangerousness, "the statutory scheme . . . expressly sets the qualified examiners apart from the other sources of expert evidence."  Johnstone, supra at 552.  Qualified examiner opinion testimony, regardless of its probative value, merely opens the door to trial. However, to prevail at trial, the Commonwealth may not rely solely on the fact that the qualified examiner has satisfied his

or her gatekeeping responsibility.  At trial, the qualified examiner testimony serves a different and more important purpose; it is the essential basis for a finding of sexual dangerousness.  This is because qualified examiners are recognized in G. L. c. 123A as independent, skilled, and accountable experts who play a unique and central role in G. L. c. 123A proceedings.  "Allowing the Commonwealth to rely on other potential sources of expert testimony, such as the CAB, to prove the petitioner's current sexual dangerousness . . . would deny the examiners their place in a statutory scheme," Johnstone, supra, which is intended to strike an appropriate balance between fairness to an offender and the interest in public safety.  Johnstone, therefore, elevates the qualified examiner's role beyond mere gatekeeping.

3.  The propriety of the qualified examiner instruction. The statutory imperative undergirding Johnstone would be nullified if the jury were permitted to find a person sexually dangerous by relying on evidence that we have concluded is insufficient to meet the Commonwealth's burden.  See Johnstone, 453 Mass. at 545 (testimony of CAB member and accompanying CAB report insufficient to avoid directed verdict).  A jury verdict finding the petitioner sexually dangerous based on evidence other than the qualified examiner's opinion is a distinct possibility where qualified examiner and CAB testimony are both

presented but the jury are not informed of the qualified examiner's centrality to the proceeding. To avoid this result, the jury must, in some fashion, be guided in distinguishing the role of the qualified examiner from that of the CAB members who testify at trial. A jury instruction that the qualified examiner's opinion must be found credible to warrant a finding of sexual dangerousness satisfies this purpose. Thus, there was no error in the judge's instruction that the jury must credit the qualified examiner's opinion to reach a finding of sexual dangerousness.

We address briefly the Commonwealth's argument that any instruction directing jurors to credit a specific expert's opinion interferes with the jury's function. See Commonwealth v. Cowen, 452 Mass. 757, 762 (2008) ("The matter of how much weight is to be given a witness, particularly an expert witness, is a matter for the trier of fact, not an appellate court"). This argument is unavailing. The instruction at issue does not usurp the jury's function because it does not dictate the weight to be given to the qualified examiner's opinion. It merely instructs the jury that they must determine it to be credible in order to find a person sexually dangerous. Our decision today does not remove a jury's ability to decide for themselves

whether a witness's opinion is credible.[14] The jury remain free to credit or discredit an expert's opinion testimony. See Commonwealth v. Blake, 454 Mass. 267, 275 (2009) (Ireland, J., concurring) ("appropriate remedy for a fact finder who views an opinion as baseless is to disregard it"). To the contrary, we reinforce the jury's role by declining to sever the pivotal function of the qualified examiner from the Commonwealth's duty to present sufficient evidence of a petitioner's sexual dangerousness.

Conclusion. The judge's instruction appropriately preserved the centrality of qualified examiners in proceedings to determine sexual dangerousness. Accordingly, there was no error in the judge's instructions to the jury, and we conclude that there is no basis on which to grant a new trial.

Order denying motion for
a new trial affirmed.

---

[14] Indeed, we can infer that the jury did not credit the opinion of the Commonwealth's qualified examiner, Dr. Connolly, because the jurors concluded that Green was no longer sexually dangerous.