CYPHER, J.
**712 In February, 2011, the petitioner was committed to the Massachusetts Treatment Center (treatment center) as a sexually dangerous person, pursuant to G. L. c. 123A, § 12. The following year, he filed a petition for examination and discharge. G. L. c. 123A, § 9. A jury found that the petitioner continued to be sexually dangerous, and an order entered continuing his commitment.
**713 On appeal, the petitioner argues for the first time that the order of commitment should be reversed because a *680 written report of a psychological examination conducted approximately twenty-four years before should not have been admitted at trial. The Commonwealth contends (among other things) that because the petitioner did not object to the report's admission at trial, the issue is waived and we should not review it on appeal. We are thus asked to decide squarely whether an appellate court will consider unpreserved arguments on appeals from sexual dangerousness proceedings under G. L. c. 123A. We conclude that, as in criminal cases, such arguments are to be reviewed for a substantial risk of a miscarriage of justice. We also conclude that there was no error in the admission of the report. In addition, we reject the petitioner's argument that his trial counsel was ineffective for conceding during his closing argument that two of the Commonwealth's expert witnesses were "very credible." The order of commitment is affirmed.[1]
Background. The jury could have found the following facts. The petitioner has a lengthy history of sexual violence. Before becoming an aggressor, the petitioner was himself a victim. He had a "horrible childhood" marked by "substantial trauma" stemming from neglect, drug use, and physical and sexual abuse. He suffered that abuse at the hands of his mother, his sisters, his half-sisters, and their friends, until he grew old enough to protect himself. Asked how these experiences were connected with his subsequent sexual offending, the petitioner responded, "In order to get rid of it, I had to give it away."
The petitioner was committed as a sexually dangerous person based on three separate cases. First, in 1990, when he was fourteen years old, the petitioner was adjudicated delinquent on two counts of indecent assault and battery on a seven year old girl, who claimed that the petitioner had grabbed her crotch and kissed her. Next, in 1994, when the petitioner was eighteen years old, he was convicted of two counts of indecent assault and battery on a fourteen year old girl. She alleged that, on one occasion, he tried to kiss her and put his hands down her pants; the next day, he lifted her shirt and attempted to touch her breasts. For this offense the petitioner received a one-year suspended sentence.
**714 Third, in 2001, the petitioner pleaded guilty to aggravated rape, assault by means of a dangerous weapon, and armed robbery. On this occasion, the petitioner approached a woman outside a bar, held a knife to her throat, and led her to the nearby woods, where he violently raped and robbed her. The petitioner was sentenced to ten years in State prison on the aggravated rape conviction, and to lesser sentences on the remaining convictions, including five years of probation. At the completion of the committed portion of his sentences, the petitioner was civilly committed as a sexual dangerous person.[2] During *681 his periods of incarceration and civil commitment, the petitioner received over one hundred disciplinary reports; some included violent behavior, but none involved sexual misconduct.
In October, 2012, the petitioner filed a petition for discharge pursuant to G. L. c. 123A, § 9, claiming that he is no longer a sexually dangerous person. The case was tried before a jury in the Superior Court in March, 2016. The Commonwealth presented testimony from three expert witnesses, including two qualified examiners, Dr. Mark Schaefer and Dr. Robert Joss, and a psychologist who is a member of the community access board (CAB), Dr. Niklos Tomich.[3] Both qualified examiners diagnosed **715 the petitioner with antisocial personality disorder, and concluded that the petitioner was sexually dangerous. Tomich testified that he and the CAB unanimously concluded that the petitioner remained sexually dangerous; in addition to antisocial personality disorder, Tomich diagnosed the petitioner with sexual sadism disorder (Schaefer and Joss concluded that there was insufficient evidence to diagnose the petitioner with sexual sadism). The petitioner presented no expert testimony on his behalf, although an aunt testified that, if released, the petitioner could live with her in New Hampshire and she would help him find a job and enroll in therapy.
The jury returned a verdict finding that the petitioner is a sexually dangerous person, and the petitioner was ordered to remain committed to the treatment center for an indeterminate period, pursuant to G. L. c. 123A, §§ 9, 14 (d ). The petitioner timely appealed, and we transferred his case from the Appeals Court on our own motion.
Discussion. 1. Standard of review. Because the petitioner's first argument on appeal is one that he did not raise at trial-an objection to the admission of a report from a psychological evaluation conducted while the petitioner was in custody for committing his first offense in the 1990s-our threshold question is one on which our appellate courts have provided conflicting guidance in recent years: whether appellate courts should consider defendants' unpreserved arguments on appeals from sexual dangerousness proceedings under G. L. c. 123A, and if so, under what standard.
Relying on one strain of authority, the Commonwealth argues that such arguments *682 are waived, and should not be considered at all. See, e.g., McHoul, petitioner, 445 Mass. 143, 157, 833 N.E.2d 1146 (2005), cert. denied, 547 U.S. 1114, 126 S.Ct. 1912, 164 L.Ed.2d 668 (2006) (declining to consider challenges to jury instructions not raised during trial under § 9 ); Commonwealth v. Mazzarino, 81 Mass. App. Ct. 358, 367, 963 N.E.2d 112 (2012) **716 (objection to testimony that defendant refused to speak with qualified examiner not raised below and therefore waived). This position finds support in the general principle, applied far more readily in the civil context, that appellate courts do not consider issues that were not raised below. See, e.g., Albert v. Municipal Court of Boston, 388 Mass. 491, 493-494, 446 N.E.2d 1385 (1983) ; see also Commonwealth v. Oakes, 407 Mass. 92, 94 n.4, 551 N.E.2d 910 (1990), quoting Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1941).
The defendant, citing this court's more recent opinions, argues that appellate courts should (and already do) review unpreserved arguments in sexual dangerousness proceedings for a substantial risk of a miscarriage of justice. See Commonwealth v. George, 477 Mass. 331, 335 n.3, 76 N.E.3d 217 (2017) (reviewing unpreserved objection for substantial risk of miscarriage of justice); Commonwealth v. Fay, 467 Mass. 574, 583 n.9, 5 N.E.3d 1216, cert. denied, --- U.S. ----, 135 S.Ct. 150, 190 L.Ed.2d 109 (2014) (same). This is the same standard that applies generally to unpreserved arguments in criminal cases. See, e.g., Commonwealth v. Randolph, 438 Mass. 290, 294, 780 N.E.2d 58 (2002). It requires a court to consider broadly whether it has "a serious doubt whether the result of the trial might have been different had the [alleged] error not been made." Commonwealth v. Azar, 435 Mass. 675, 687, 760 N.E.2d 1224 (2002), quoting Commonwealth v. LeFave, 430 Mass. 169, 174, 714 N.E.2d 805 (1999).
This split in authority regarding the scope of our review stems in part from the quasi civil, quasi criminal nature of sexual dangerousness proceedings. On the one hand, "[w]e have repeatedly emphasized the fundamental difference between criminal punishment and civil commitment of a sexually dangerous person, stating that a 'G. L. c. 123A proceeding is neither criminal nor penal in nature, but is a civil proceeding to which constitutional rights afforded criminal defendants do not necessarily apply.' " Commonwealth v. Curran, 478 Mass. 630, 637, 88 N.E.3d 862 (2018) (Kafker, J., concurring), quoting Commonwealth v. Burgess, 450 Mass. 366, 374, 878 N.E.2d 921 (2008).[4] At the same time, we have recognized that, like criminal punishment, commitment due to sexual dangerousness **717 infringes on an individual's protected liberty interest. See, e.g., Commonwealth v. Nieves, 446 Mass. 583, 590, 846 N.E.2d 379 (2006), citing G. L. c. 123A, §§ 6A, 14 ("The defendant's interest is weighty. If committed, his loss of liberty would be total. ... Commitment is for an indeterminate period ..., and he has a strong interest in avoiding such *683 commitment"); Commonwealth v. Bruno, 432 Mass. 489, 502, 735 N.E.2d 1222 (2000), quoting Commonwealth v. Travis, 372 Mass. 238, 250, 361 N.E.2d 394 (1977) ("While commitment proceedings under c. 123A are civil proceedings, the potential deprivation of liberty to those persons subjected to these proceedings 'mandates that due process protections apply' "). In fact, we have stated that a determination of sexual dangerousness "may have far more serious consequences for the individual than criminal punishment," given that persons are "subject to a one day to life commitment." Travis, supra at 246, 361 N.E.2d 394. See G. L. c. 123A, § 14 (d ).[5]
"[I]n deciding what safeguards are required, it is necessary to look at the nature of the right which the State seeks to circumscribe. The more precious the right, the greater the protection, whether the proceedings be labelled civil or criminal." Commonwealth v. Knowlton, 378 Mass. 479, 487, 392 N.E.2d 1021 (1979), citing Travis, 372 Mass. at 246, 361 N.E.2d 394 ; Andrews, petitioner, 368 Mass. 468, 487-488, 334 N.E.2d 15 (1975). Given the fundamental liberty interest at stake in sexual dangerousness proceedings, we consider it appropriate to review arguments that are raised for the first time on appeal.[6] When evaluating such unpreserved arguments, we apply the same standard **718 governing criminal cases: review for a substantial risk of a miscarriage of justice.
2. Admission of the report. We now turn to the merits of the petitioner's appeal. During its direct examination of Tomich, the Commonwealth introduced, without objection from the petitioner's trial counsel, a report from a psychological consultation of the petitioner when he was sixteen years old and in custody of the Department of Youth Services (DYS) for his first offense (the petitioner was forty years old at the time of trial). The report indicated that during DYS treatment, the petitioner had disclosed additional details about the indecent assault and battery, including that he had "repeatedly rape[d] the [victim] over an extended period of time. There was force involved in the rapes, and at the time of the last rape, [the petitioner] disclosed 'choking her until she passed out. I left her for dead, so I just forgot about her.' " The petitioner now contends that the judge's admission of this report was erroneous and created a substantial risk of a miscarriage of justice that warrants reversal of the order of commitment, *684 on the grounds that the report was unreliable and unfairly prejudicial.
Review for a substantial risk for a miscarriage of justice requires considering "the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision." Azar, 435 Mass. at 687, 760 N.E.2d 1224. Where there is no error, however, there can be no risk of a miscarriage of justice. See, e.g., Randolph, 438 Mass. at 303, 780 N.E.2d 58. And we discern no error here.
The ordinary rules of evidence do not apply in sexual dangerousness proceedings, see McHoul, petitioner, 445 Mass. at 147, 833 N.E.2d 1146, and psychological records, including juvenile records, are expressly admissible under the governing statute. G. L. c. 123A, § 9. The report was not protected by the psychotherapist-patient privilege, G. L. c. 233, § 20B, as it was introduced as evidence of the petitioner's mental condition (the purpose of the proceeding is to assess whether the petitioner is sexually dangerous) and "not as a confession or admission of guilt" with respect to the offense; further, the report makes clear that the petitioner was advised at the time of the evaluation that the conversation would not be **719 confidential, as is required under Commonwealth v. Lamb, 365 Mass. 265, 270, 311 N.E.2d 47 (1974). Contrast Department of Youth Servs. v. A Juvenile, 398 Mass. 516, 524-527, 499 N.E.2d 812 (1986) (substantial risk of miscarriage of justice where testifying psychiatrist failed to give juvenile Lamb warning before interview).[7]
In addition, when considering the significance of the psychological report in the context of the Commonwealth's case against the petitioner, Azar, 435 Mass. at 687, 760 N.E.2d 1224, its admission created no substantial risk of a miscarriage of justice. Tomich, when asked what significance he attached to the report, replied, "not a lot," and said that the CAB "take[s] additional information like this with a grain of salt." He added further that he "saw nothing in the record that indicated that this was a consistent account on the part of [the petitioner]." Similarly, the report did not figure prominently in the testimony or report of either qualified examiner; rather, each remarked that the petitioner's most recent offense, the rape, was the most concerning (Schaefer noted that the rape "appears to be the most serious in terms of [the petitioner's] committing harm to [a] victim," and Joss testified that the offense involved "a significant escalation in the amount of violence" compared to the prior offenses). And ultimately, all three experts testified that the petitioner remains sexually dangerous, based on his history of sexual offenses and his mental health diagnoses, as well as his lack of progress in treatment programs and his disciplinary record while incarcerated, which demonstrate the petitioner's continued inability to control himself.
3. Ineffective assistance of counsel. Last, the petitioner argues that *685 his trial counsel was ineffective for conceding during closing arguments that both qualified examiners, who had testified that the petitioner remains sexually dangerous, were "very credible." Generally, the preferred method for challenging the effectiveness of trial counsel is through a motion for a new trial, see, e.g., Commonwealth v. Zinser, 446 Mass. 807, 810, 847 N.E.2d 1095 (2006), and cases cited, as the "court [then] has the benefit of affidavits and other **720 materials from trial counsel" explaining the reason for his or her actions, Commonwealth v. Ferreira, 67 Mass. App. Ct. 109, 115, 852 N.E.2d 1086 (2006). Where there is no motion for a new trial we are often unable to discern trial counsel's strategy, and therefore unequipped to determine whether counsel's actions "[fell] measurably below that which might be expected from an ordinary fallible lawyer." Commonwealth v. Saferian, 366 Mass. 89, 96, 315 N.E.2d 878 (1974). Here, however, it appears from the record that trial counsel chose, as a matter of strategy, to focus the jury on the testimony of the qualified examiners as credible witnesses because they had both diagnosed the petitioner with antisocial personality disorder, which does not necessarily lead to sexual misbehavior, rather than the testimony of the CAB expert, who had diagnosed the petitioner with sexual sadism. While conceding the credibility of witnesses who have offered adverse testimony cannot always, as a general matter, be considered sound strategy-both qualified examiners concluded that the petitioner remains sexually dangerous-counsel's reasoned, strategic concession here was not facially ineffective, given the relative strength of the Commonwealth's case and weakness of the petitioner's case. See, e.g., T.A. Mauet, Trial Techniques and Trials § 9.11 (10th ed. 2017) ("An important part of closing argument is addressing juror concerns and apparent weaknesses. ... Good lawyers always deal candidly with the jurors' concerns and look for ways to turn apparent weaknesses into strengths").
Judgment affirmed.

We acknowledge the amicus brief submitted by the Committee for Public Counsel Services.

A "sexually dangerous person" is defined, in pertinent part, as "any person who has been ... convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility," or who was "previously adjudicated as such by a court of the commonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of [sixteen] years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires." G. L. c. 123A, § 1.

General Laws c. 123A, § 9, sets forth the detailed procedural requirements for a trial on a petition for release. The petitioner must be examined by two "qualified examiners, who shall conduct examinations, including personal interviews, of the [petitioner] ... and file with the court written reports of their examinations and diagnoses, and their recommendations for the disposition of such person. Said reports shall be admissible in a hearing pursuant to this section.... The qualified examiners shall have access to all records of the person being examined." G. L. c. 123A, § 9. "A qualified examiner is either (1) a physician who is licensed by the Commonwealth and certified or eligible to be certified in psychiatry by the American Board of Psychiatry and Neurology; or (2) a psychologist who is licensed by the Commonwealth. In all cases, a qualified examiner is designated as such by the Department of Correction and has at least two years of experience with diagnosis or treatment of sexually aggressive offenders." Green, petitioner, 475 Mass. 624, 625 n.3, 59 N.E.3d 1127 (2016), citing G. L. c. 123A, § 1. See Green, petitioner, supra at 630, 59 N.E.3d 1127 ("qualified examiners are recognized in G. L. c. 123A as independent, skilled, and accountable experts who play a unique and central role in G. L. c. 123A proceedings"). In addition to the requisite qualified examiner testimony, the Commonwealth may present additional expert testimony through a representative of the CAB, "whose function shall be to consider a person's placement within a community access program and conduct an annual review of a person's sexual dangerousness." G. L. c. 123A, § 1.

In Commonwealth v. Bruno, 432 Mass. 489, 735 N.E.2d 1222 (2000), we referenced several components of G. L. c. 123A that render the statute remedial, such that it is "nonpunitive and ... civil," not criminal (for purposes of deciding whether c. 123A is an ex post facto law). Id. at 500, 735 N.E.2d 1222, quoting Powers v. Commonwealth, 426 Mass. 534, 538, 694 N.E.2d 324 (1998). These included the statute's "civil" designation, its location "among public welfare chapters of the General Laws" (rather than the criminal code), and its over-all purpose of providing for the "care, custody, treatment and rehabilitation," not punishment, of persons committed to the treatment center. Bruno, supra, quoting G. L. c. 123A, § 2.

Among its criminal components, G. L. c. 123A applies the "beyond a reasonable doubt" standard to the determination of an individual's competency to stand trial, id. at § 15, as well as to the ultimate determination of sexual dangerousness. Id. at § 14 (d ). Likewise, the statute "provides a right to counsel to individuals who the Commonwealth seeks to commit." Commonwealth v. Sargent, 449 Mass. 576, 581 & n.7, 870 N.E.2d 602 (2007), citing G. L. c. 123A, §§ 9, 12, 13, 14.

Waiver doctrine "serves a dual purpose: it protects society's interest in the finality of its judicial decisions ... and promotes judicial efficiency." Commonwealth v. Randolph, 438 Mass. 290, 294, 780 N.E.2d 58 (2002), citing Commonwealth v. Amirault, 424 Mass. 618, 637, 677 N.E.2d 652 (1997), and Commonwealth v. Pisa, 384 Mass. 362, 366, 425 N.E.2d 290 (1981). Strict adherence to the doctrine in this context, however, would not achieve those dual purposes. See, e.g., Doe, Sex Offender Registry Bd. No. 209081 v. SexOffender Registry Bd., 478 Mass. 454, 464-465, 86 N.E.3d 474 (2017) (Gants, C.J., dissenting) (discussing manner in which "the interest in finality is considerably less weighty in a sexual risk classification proceeding than in a criminal case"). Judicial economy would not be served by limiting petitioners to arguments that were raised below, as a failure to object at trial may result in a petitioner's claiming ineffective assistance of counsel on appeal, based on counsel's failure to make the proper objection.

The petitioner argues that the report is unreliable (and therefore inadmissible) because it gives "no indication whether a parent or interested adult was included" when the petitioner was given the Lamb warning and agreed to proceed. In support, the petitioner cites Commonwealth v. Alfonso A., 438 Mass. 372, 380-381, 780 N.E.2d 1244 (2003), quoting Commonwealth v. MacNeill, 399 Mass. 71, 78, 502 N.E.2d 938 (1987), which states the principle that a valid waiver of Miranda rights by a juvenile age fourteen years or older requires a "genuine opportunity" to consult with an "interested adult." We decline to extend this requirement to the giving of a Lamb warning to a juvenile.