NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-212

COMMONWEALTH

vs.

RONALD FRANKLIN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the Superior Court, the defendant, Ronald Franklin, was found to be a sexually dangerous person (SDP), and was committed to the Massachusetts Treatment Center under G. L. c. 123A, § 14 (d). On appeal, he argues that (1) a psychologist improperly opined as to the defendant's risk of reoffense; (2) the prosecutor improperly shifted the burden of proof by her questions on cross-examination of the defendant and in her closing argument; and (3) the judge improperly instructed on the meaning of the word "likely" as used in the statutory definition of SDP, G. L. c. 123A, § 1, by paraphrasing Commonwealth v. Boucher, 438 Mass. 274, 276 (2002). We affirm.

Background. In July 2020, based on a review of the defendant's records, forensic psychologist Dr. Gregg A. Belle issued a report opining that there was probable cause to believe

that the defendant was an SDP.  As a result, the Commonwealth filed a petition in the Superior Court to commit the defendant as an SDP.

Before the commitment trial, the defendant moved in limine to preclude the introduction of Dr. Belle's report absent an evidentiary hearing pursuant to Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993), and Commonwealth v. Lanigan, 419 Mass. 15, 26 (1994).  The judge denied the motion.  The Commonwealth moved in limine to admit Dr. Belle's testimony, which the judge allowed.

At the time of trial in 2021, the defendant was sixty-one years old.  He had previously been convicted of two counts of rape of a child, indecent assault and battery on a child under fourteen, and dissemination of pornographic material to a minor. He committed those sex offenses between 1997 and 2000 against his girlfriend's two daughters when they were between five and seven years old and ten and eleven years old (first victims). For those convictions, the defendant was sentenced to ten to twelve years in State prison.  During that incarceration, he did not participate in sex offender treatment because his case was on appeal.  After completing his committed sentence, he was on probation on conditions including that he stay away from children under sixteen years old.  He was required to register as a level three sex offender.

On October 22, 2018, the defendant was living in a motel. He befriended an eleven year old girl who also lived there, and showed her his phone containing photographs of adult naked women. A police report documented that the defendant had tickled the girl, accidentally touched her buttocks, and filmed her doing cartwheels, handstands, and backbends. As a result, the defendant was convicted of disseminating obscene matter to a minor. He was also convicted of failure to register as a sex offender.

At trial, the Commonwealth relied on the testimony of one qualified examiner (QE), Dr. Kaitlyn Peretti, who opined that the defendant met the criteria for a diagnosis of pedophilic disorder. Dr. Peretti further opined that the defendant also met the definition for being a menace to society based on his past and recent offenses, and that he was likely to reoffend sexually if not confined to a secure facility.

The Commonwealth also presented the testimony of Dr. Belle and introduced in evidence his report of the probable cause evaluation, see Commonwealth v. Bruno, 432 Mass. 489, 511 (2000).[1]  Dr. Belle opined that the defendant was a sexually dangerous person, and that his clinical diagnosis was pedophilic

_____

[1] Asked during trial if he objected to admission of Dr. Belle's report, the defendant's counsel said, "No objection, Judge, subject to what we discussed about certain redactions."

3

disorder. Based on his score of three on the Static-99R assessment, Dr. Belle opined that the defendant had a 7.9 percent chance of reoffending in a five-year period. Dr. Belle testified that the defendant's age at the time of trial, sixty-one, would ordinarily reduce his risk to reoffend, but age did not have a protective effect for the defendant, because he was fifty-seven years old when he was arrested for his most recent sex offense, an age when his risk for recidivism statistically would be approaching zero. In addition, Dr. Belle did not consider probation as reducing the defendant's risk to reoffend, because he had offended against the victim in the motel while on probation.

The defendant's QE, Dr. Angela Johnson, and expert witness, Dr. Leonard A. Bard, opined that the defendant was not sexually dangerous. Dr. Johnson testified that the defendant did not meet the criteria of having a lack of control over his sexual impulses, nor the criteria for pedophilic disorder.

The jury found the defendant to be sexually dangerous and the judge committed him to the Massachusetts Treatment Center for an indeterminate period, pursuant to G. L. c. 123A, § 14 (d). The defendant timely appealed.

Discussion. Admission of Dr. Belle's testimony. The defendant argues that Dr. Belle improperly opined that the defendant's likelihood of recidivism was increased by his lack

4

of participation in sex offender treatment, his antisocial orientation, and his minimization and denial of his crimes. The defendant argues that he preserved this issue for appellate review by filing his pretrial Daubert-Lanigan motion. That motion was focused on excluding Dr. Belle's report, to which the defendant did not object at trial.[2] In those circumstances, we doubt that the defendant preserved the admissibility of Dr. Belle's testimony for appellate review, but do not pause to consider that issue, because even if the error had been preserved, we discern no error here.

The defendant argues that Dr. Belle's opinion testimony was inadmissible because he did not serve as a QE in this case and therefore his testimony should not have been admitted absent a Daubert-Lanigan hearing. There was no error. "[A]ny . . . evidence tending to show that [the defendant] is or is not a sexually dangerous person shall be admissible at the trial if such written information has been provided to opposing counsel reasonably in advance of trial." G. L. c. 123A, § 14 (c). See Commonwealth v. Cowen, 452 Mass. 757, 761 (2008) ("a qualified probable cause expert . . . may testify at the commitment hearing"). Contrast Commonwealth v. Ridley, 491 Mass. 321, 327-

---

[2] In a single phrase, the defendant's pretrial motion asked that the judge "[p]rohibit this witness from testifying," but the previous sentence referred to an expert who did not testify in this case.

5

328 (2023) (expert testimony on juvenile brain development not relevant, because not specific to defendant).

The defendant also argues that Dr. Belle's testimony was not admissible because Dr. Belle did not provide any studies showing its reliability. In particular, the defendant finds fault with Dr. Belle's testimony that the defendant had "an antisocial orientation," because Dr. Belle acknowledged that the defendant did not have a personality disorder or a disciplinary history. Dr. Belle opined that the defendant's character traits that increased his risk for reoffending included his having been convicted of sex offenses on more than one occasion, and his having minimized or denied aspects of the sex offenses against the first victims, which Dr. Belle considered "noteworthy" in terms of the defendant's risk to reoffend. To the extent that the defendant found fault with Dr. Belle's opinion, he was free to -- and did -- attack it on cross-examination, including by asking about studies on which it was based. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Commonwealth v. Sliech-Brodeur, 457 Mass. 300, 328 n.40 (2010), quoting Daubert, 509 U.S. at 596. See Mass. G. Evid. § 703 (2022).

The defendant further argues that Dr. Belle's testimony that persons who receive sex offender treatment are less likely to reoffend sexually than those who do not violated Commonwealth v. Hunt, 462 Mass. 807 (2012). Hunt held that "[a]t an SDP civil commitment proceeding, a [QE] or the Commonwealth's expert witness may offer the opinion -- assuming it is sufficiently supported by empirical evidence -- that those who receive or complete sex offender treatment are less likely sexually to reoffend than those who do not." Id. at 818. The defendant argues that Dr. Belle's opinion was not sufficiently supported by empirical evidence. We disagree. Dr. Belle explained: "Empirically means research, so I'm looking at information in the research, peer review journal articles, for example, that would determine risk factors which may increase or decrease one's risk to reoffend sexually." To the extent that the defendant wanted to probe Dr. Belle's knowledge of those empirical studies, that was a subject for cross-examination or the presentation of the defense experts. See id at 818 & n.8. It did not render Dr. Belle's opinion inadmissible.

Cross-examination of defendant. The defendant argues that the prosecutor improperly shifted the burden of proof during her cross-examination of him.

On direct examination, the defendant testified that while in prison on the sentences for the child sex offenses, he passed

7

the time by working, reading, and gardening.  On cross-examination, he testified that he did not participate in sex offender treatment because his case was on appeal.  The prosecutor asked about other programs, such as those involving violence reduction and "health awareness," and he testified that no such programs were available.  Asked if he could have requested to be reclassified and transferred to a different facility where more programming was available, the defendant replied, "Yeah, I didn't want to leave Gardner . . . the other prisons weren't good environments for me."  When the prosecutor asked, "Even though those other prisons might have had some programming that you could have done?" the defendant replied, "It just wasn't worth going there."  The defendant did not object to those questions, and so we review for a substantial risk of a miscarriage of justice.

That questioning did not shift the burden of proof.  "[T]he prosecutor did not focus the jury's attention on a specific element missing from the defense, nor did the prosecutor otherwise suggest to the jury -- either implicitly or explicitly -- that the defendant had an affirmative duty to counter the Commonwealth's evidence against him."  Commonwealth v. Johnson, 463 Mass. 95, 113 (2012).  No substantial risk of a miscarriage of justice arose.

Prosecutor's closing argument.  The defendant contends that in her closing argument the prosecutor improperly urged the jury not to be "distracted" by scientific evidence, shifted the burden of proof, and misquoted Dr. Johnson's report.  The defendant objected on the first of those grounds, but not on the latter two.  In those circumstances, we review the prosecutor's argument to which the defendant did object for prejudicial error, see Commonwealth v. Cole, 473 Mass. 317, 333 (2015), and his remaining claims to determine if a substantial risk of a miscarriage of justice arose, see Commonwealth v. Sanders, 101 Mass. App. Ct. 503, 511 (2022).

The prosecutor's statement during closing argument urging the jury not to be "distracted . . . by discussions about actuarial tools or studies or statistics [or] the differences between personality disorder[s]" did not create prejudicial error.  The defendant argues that this statement was prejudicial because, he contends, it amounted to advising the jury "to ignore approximately half the evidence at trial."  The jury would not have understood the prosecutor's statement not to be "distracted" by certain evidence as amounting to a request that they "ignore" it.  Indeed, the experts presented by both the Commonwealth and the defendant relied on actuarial tools and statistics; the experts agreed on the results of those tools, but disagreed as to whether the dynamic risk factors should be

9

interpreted to label the defendant a sexually dangerous person. In context, the prosecutor was merely highlighting the elements in dispute between the parties. Contrast Hunt, 462 Mass. at 825 (prosecutor improperly argued that defendant was "sexually frustrated" after years in prison without "access to the children that he desires"). There was no prejudicial error.

The defendant next argues that the prosecutor's use of a rhetorical question in closing argument, to which he did not object, was burden-shifting. The defendant argues that the prosecutor shifted the burden when she argued, "Has [the defendant] convinced you that he understands his offending behavior?" Viewing this question in the context of the closing argument as a whole, it did not create a substantial risk of a miscarriage of justice. This question was in the context of the prosecutor's discussing the requirements for finding the defendant sexually dangerous and arguing from the defendant's own testimony and demeanor that he was. "So long as the prosecutor's closing argument is grounded in the evidence, the prosecutor may 'argue the evidence and the fair inferences which can be drawn from the evidence.'" Commonwealth v. Childs, 94 Mass. App. Ct. 67, 76 (2018), quoting Commonwealth v. Rivera, 91 Mass. App. Ct. 796, 801 (2017). Further, defense counsel did not object or seek curative instructions on the parts of the prosecutor's argument said to be burden-shifting. "[T]he

10

absence of any such request from experienced counsel is some indication that the tone, manner, and substance of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial." Commonwealth v. Toro, 395 Mass. 354, 360 (1985).

The defendant further argues that during the prosecutor's closing argument, she misquoted Dr. Johnson's report, and the effect of the misquotation was "possibly crucial." During closing argument, the prosecutor told the jury to note that Dr. Johnson's report had said that "it's very likely" that the defendant's conduct toward the victim in the motel could have escalated to a sexual offense, when in fact that report stated, "It is also possible that [the defendant] was engaging in overt grooming of [the victim] and that given enough time, he might have escalated to a hands-on sexual assault." While the prosecutor did misquote Dr. Johnson's report as saying "very likely" instead of "possible," no substantial risk of a miscarriage of justice arose. The judge instructed the jurors that "[i]f . . . either of the lawyers called your attention to [a] matter of evidence that you do not remember collectively as a juror, then you're free to ignore them because it's your memory of the testimony that must control your deliberations in this case." Here, where the prosecutor's misstatement was based on Dr. Johnson's report, which was admitted in evidence and

available to the jury during deliberations, it is particularly unlikely that the jury would have been influenced by the misstatement.

Jury instruction defining "likely." The defendant argues that the judge improperly instructed the jury by defining the meaning of the word "likely" as used in the definition of an SDP in G. L. c. 123A, § 1, by paraphrasing the Supreme Judicial Court's holding in Boucher, 438 Mass. at 276. He did not object to the instruction, and so we review the issue for a substantial risk of a miscarriage of justice. See R.B., petitioner, 479 Mass. 712, 717-718 (2018).

The judge instructed:

"It is not enough for the Commonwealth to establish that [the defendant] has a propensity or a tendency to commit sexual offenses or that there is a possibility that he may do so. Instead, the Commonwealth must prove that it is reasonably to be expected, given the particular facts and circumstances at hand, that if [the defendant] is not confined in the treatment center, that he will commit additional sexual crimes involving physical contact either in Massachusetts or elsewhere."

The defendant concedes that the judge's instruction comported with Boucher, 438 Mass. at 276-277, but contends that the definition is unconstitutionally vague. The Supreme Judicial Court in Boucher specifically stated that its definition, later paraphrased by the judge in the instruction quoted above, was "a contextual construction of 'likely' [that] is not so vague as to be unfair." Id. at 277 n.2. See Commonwealth v. Husband, 82

12

Mass. App. Ct. 1, 7 (2012) (it is for fact finder to determine what is "likely").  The jury instruction defining "likely" did not create a substantial risk of a miscarriage of justice.

Judgment affirmed.

By the Court (Ditkoff,
  Singh & Grant, JJ.[3]),

*Joseph F. Stanton*

Clerk

Entered:  March 10, 2023.

---

[3] The panelists are listed in order of seniority.